Shirley A. **DOHERTY**, Plaintiff

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 95–11816–EFH.

United States District Court,
D. Massachusetts.

Dec. 1, 1995.

Sara Miron Bloom, United States Attorney's Office, Boston, MA, Susan B. Hanmer, Boston, MA, Oliver C. Mitchell, Jr., Goldstein & Manello, Boston, MA, for Plaintiff.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

This matter is before the Court on the Defendant United States of America's Motion to Dismiss or, in the Alternative, for Summary Judgment as to the claims of the Plaintiff Shirley A. Doherty pursuant to the Federal Tort Claims Acts ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. For the reasons stated below, the Court grants the defendant's motion.

On October 12, 1993, three armed men robbed a Brink's armored car in Charlestown, Massachusetts. In the process, they assaulted the attendant and made off with $45,000 and a .38 caliber revolver. Later that evening, one of the robbers, Joseph Nardone, told a confidential informant that he and two others had committed the crime. Nardone also revealed that the weapons that they had used in the heist were at the home of another one of the perpetrators, Alan Skinner. Among these weapons were a M–11, a shotgun, and a .44 caliber handgun. The informant said that Skinner lived in Charlestown on Mount Vernon Street, near the Bunker Hill Monument, with his girlfriend, Kathy Doherty.

During the late evening of October 12, and into the early morning of October 13, the informant met with agents and an Assistant United States Attorney (the "AUSA"). These agents were members of the Federal Bureau of Investigation, the United States Drug Enforcement Agency and the Massachusetts State Police. The agents and the AUSA attempted to discover and confirm the address of "Kathy Doherty." After examining utility, telephone, and drivers' license records, they decided that the only household on Mount Vernon Street with her same last name was that of a "Joseph Doherty" at number 43. The informant thought that this man was the father of Kathy Doherty. As a result, the agents and the AUSA decided to ask the emergency United States Magistrate for a search warrant. At 6:00 A.M. on October 13, the Magistrate issued a search warrant for 43 Mount Vernon Street. Immediately thereafter, the agents executed the warrant and searched the home. This home was the residence of a Shirley A. Doherty, the plaintiff.[1]

Almost simultaneously as the agents were conducting the search, another group of law enforcement officers discovered that Kathy Doherty lived at 44 Chestnut Street in Charlestown. The first group of agents then submitted to the Magistrate a second application for a search warrant. This material included a statement that "information on which the first search warrant request was predicated was not entirely accurate, in that Doherty's apartment is actually located one street away from Mount Vernon Street, on Chestnut Street in Charlestown, Massachusetts." When the agents searched the second address, they found evidence of the robbery including two weapons and multiple rounds of ammunition. An agent returned to Shirley Doherty's home, explained the mistake, and apologized to her. All three of the armed robbers were subsequently convicted of various federal criminal offenses.

The Plaintiff Doherty asserts that the federal officers negligently prepared a search warrant which resulted in an erroneous search of her home. She alleges a cause of action pursuant to the FTCA sounding in the alternative theories of negligence, negligent infliction of emotional distress, violation of Article Fourteen of the Massachusetts Constitution,[2] and violation of the Fourth Amendment of the United States Constitution. The United States, however, maintains that the FTCA's discretionary function exception, 28 U.S.C. § 2680(a), protects the type of investigatory decision which the agents and the AUSA made, prior to seeking

---

1. The "Joseph Doherty" of 43 Mount Vernon Street listed in the telephone directory had died on March 6, 1987. He was the father of the plaintiff.

2. Article Fourteen of the Massachusetts Constitution protects a citizen's right to be secure from all unreasonable searches and seizures.

a search warrant.[3]

▇ The issue before this Court is whether the actions of the federal law enforcement personnel, in preparing the first search warrant, were within the discretionary function exception to the FTCA. Application of the FTCA's discretionary function exception is proper if the act involved an element of judgment or choice and the action or decision was based on considerations of public policy. *United States v. Gaubert*, 499 U.S. 315, 322–23, 111 S.Ct. 1267, 1273–74, 113 L.Ed.2d 335 (1991). In *Gaubert*, the Supreme Court held that the Congress designed the exception to protect acts based on considerations of public policy, and grounded in social, economic and political policy. *Id.* The Supreme Court also held that the operation of the exception depends on the nature of the conduct rather than on the status of the actor.[4] *Id.* at 323, 111 S.Ct. at 1274. When governmental policy through statute, regulation, or agency guidelines, permits a government agent to use discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that decision." *Id.* at 324, 111 S.Ct. at 1274.

▇ Under the particular factual circumstances of this matter, the Court rules that the conduct of the federal agents and the AUSA falls within the parameters of the discretionary function exception. First, the law enforcement personnel made a judgment based upon their discretion to seek a search warrant upon the information which they had at the time. Second, the decision was based upon the public policy of preventing crime by acting with expedition. The process of deciding how and when to seek a search warrant involves a judgment and a choice grounded in policy considerations regarding the enforcement of the criminal laws toward protecting the public safety. This type of decision-making is more than merely a ministerial act. The exception applies if there was room for

choice based upon considerations of public policy. *Attallah v. United States*, 955 F.2d 776, 783–84 (1st Cir.1992).

The "purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort ..." *Gaubert*, 499 U.S. at 323, 111 S.Ct. at 1274 (citations omitted). In addition, the First Circuit has noted that there have been several cases applying the exception that protects the decisions of law enforcement officers "made in the heat of the moment." *Horta v. Sullivan*, 4 F.3d 2, 21 (1st Cir.1993); *see also id.* (citing cases holding exception protects decisions of law enforcement agents to fulfill their duty to enforce laws). "The overwhelming consensus of federal case law establishes that criminal law enforcement decisions—investigative and prosecutorial alike—are discretionary in nature and, therefore, by Congressional mandate, immune from judicial review." *Mesa v. United States*, 837 F.Supp. 1210, 1213 (S.D.Fla.1993). Furthermore, "[w]ere negligence actionable under these circumstances, law enforcement tactics would become hesitant, apprehensive, and less effective." *McElroy v. United States*, 861 F.Supp. 585, 592 n. 13 (W.D.Tex.1994). The expeditious response to crime cannot be inhibited by the threat of tort action based merely on negligence.

The agents and the AUSA could have discovered upon further investigation that they were seeking a search warrant for the wrong address. Their primary concern at the time, however, was preventing the criminals from using or moving and secreting the firearms. The important consideration was to move with dispatch to avoid any further violent acts against the public. Within that framework, they had to act immediately to obtain a search warrant. Because the Court rules

---

3. The government also asserts that the plaintiff's claims for negligent investigation are not actionable under state law; that claims arising out of any misrepresentation to the federal magistrate are exempted from coverage of the FTCA by 28 U.S.C. § 2680(h); and the plaintiff's claims under the United States Constitution are barred by the doctrine of sovereign immunity.

4. The Court also ruled that there was no basis for drawing any distinction between actions taken at an operational or planning level of the government. *Gaubert*, 499 U.S. at 316–17, 111 S.Ct. at 1270–71. Consequently, the exception does not apply exclusively to policy making or planning functions. *Id.*

that the discretionary function exception applies in this matter, it does not rule on the United States' other defenses.

For the reasons mentioned above, the Court grants summary judgment for the defendant.

SO ORDERED.