**134 Nev., Advance Opinion 49**

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

JAPONICA GLOVER-ARMONT,
Appellant,
vs.
JOHN CARGILE; AND CITY OF
NORTH LAS VEGAS, A MUNICIPAL
CORPORATION EXISTING UNDER
THE LAWS OF THE STATE OF
NEVADA IN THE COUNTY OF CLARK,
Respondents.

No. 70988



FILED

JUL 19 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Japonica Glover-Armont appeals from a district court order granting summary judgment in a tort action. Eighth Judicial District Court, Clark County; William D. Kephart, Judge.

*Affirmed in part, reversed in part, and remanded.*

Ganz & Hauf and Adam Ganz, Jeffrey L. Galliher, Marjorie L. Hauf, and David T. Gluth II, Las Vegas,
for Appellant.

Micaela Rustia Moore, City Attorney, and Christopher D. Craft, Senior Deputy City Attorney, North Las Vegas,
for Respondents.

Amanda Kellar and Caitlin Cutchin, Bethesda, Maryland; Lewis Brisbois Bisgaard & Smith, LLP, and Robert W. Freeman and Cheryl A. Grames, Las Vegas,
for Amicus Curiae International Municipal Lawyers Association.

BEFORE SILVER, C.J., TAO and GIBBONS, JJ.

## OPINION

By the Court, SILVER, C.J.:

In this appeal, we consider whether the discretionary-act immunity doctrine applies to an action arising from a vehicular accident involving a police officer responding to an emergency. NRS 41.032(2) provides immunity to government officials acting within their discretionary purview. However, that statute is in tension with NRS 484B.700, which allows a police officer to proceed past a red traffic signal in an emergency, but also requires that officer to utilize audio and visual or visual signals only, as required by law, and to drive with due regard for others' safety when doing so. Having considered the tension between these two statutes, we conclude that discretionary-act immunity is unavailable in the circumstance identified above because the language of NRS 484B.700(4) mandates that the police officer drive with due regard for the safety of others, and this duty is not discretionary.

While responding to an emergency call early one morning, North Las Vegas Police Department Sergeant John Cargile made a left turn against a red light, and collided with Japonica Glover-Armont's vehicle, injuring her. Glover-Armont thereafter sued Sergeant Cargile and the City of North Las Vegas, alleging various negligence claims and vicarious liability. The district court granted summary judgment in favor of Sergeant Cargile and the City of North Las Vegas, concluding the doctrine of discretionary-act immunity provided them with qualified immunity to Glover-Armont's claims.

We conclude that the district court erred by granting summary judgment based upon discretionary-act immunity as NRS 484B.700(4) does not confer discretion, and therefore, the discretionary-immunity doctrine does not apply. We further conclude that the facts regarding the incident

are highly contested, and a jury, taking the facts in the light most favorable to Glover-Armont, could conclude that Sergeant Cargile breached NRS 484B.700(4)'s duty of care. Accordingly, summary judgment on Glover-Armont's negligence, negligent entrustment, and vicarious liability claims was improper.

## FACTS AND PROCEDURAL HISTORY

In the early morning hours of November 5, 2012, appellant Japonica Glover-Armont drove eastbound towards an intersection displaying a green traffic signal for eastbound traffic. Simultaneously, respondent North Las Vegas Police Department Sergeant John Cargile, responding to an emergency, drove northbound toward the same intersection. A large hill located off the southwest corner of the intersection obstructed both Sergeant Cargile's view of eastbound oncoming traffic and Glover-Armont's view of northbound oncoming traffic. Sergeant Cargile, in an effort to quickly reach the emergency, attempted to make a left turn against the red traffic signal for northbound traffic, but his vehicle collided with Glover-Armont's vehicle within the intersection. Glover-Armont suffered injuries in the collision. The parties do not dispute that Sergeant Cargile activated his emergency lights, but Glover-Armont contends that Sergeant Cargile failed to use his siren.

Glover-Armont sued Sergeant Cargile and respondent City of North Las Vegas for negligence, vicarious liability, and negligent entrustment, as well as negligent hiring, training, and supervision. Glover-Armont alleged that Sergeant Cargile failed to use due care and failed to engage his siren in the course of responding to an emergency. The City of North Las Vegas traffic investigator who investigated the accident reported that Glover-Armont was not speeding and that it was impossible for

Sergeant Cargile to see oncoming eastbound traffic while traveling northbound until he entered the intersection.

Sergeant Cargile and the City of North Las Vegas (collectively, North Las Vegas) moved for summary judgment, arguing that discretionary-act immunity barred Glover-Armont's claims. North Las Vegas acknowledged that the hill on the corner obstructed Sergeant Cargile's visibility, making it nearly impossible for him to see eastbound oncoming traffic before entering the intersection. Nevertheless, North Las Vegas argued that Sergeant Cargile's decision to enter the intersection against a red traffic signal, even if made without due care, was a discretionary decision in furtherance of public policy because he did so in response to an emergency call, and, therefore, discretionary-act immunity barred all of Glover-Armont's claims against North Las Vegas.

Glover-Armont conceded that Sergeant Cargile's decision to proceed against a red traffic signal in an emergency was discretionary. However, she argued that his decision to do so without a siren and without due care as required by NRS 484B.700 was not discretionary. Additionally, Glover-Armont noted in her supplemental opposition to North Las Vegas' summary judgment motion that the parties still disputed whether Glover-Armont saw Sergeant Cargile's lights, whether Sergeant Cargile engaged his siren, whether Glover-Armont had her headlights on, whether Cargile proceeded through the intersection when Glover-Armont was already in the intersection, and who hit whom.

During argument on North Las Vegas' summary judgment motion, the district court noted that the parties still disputed whether Sergeant Cargile operated his siren when traveling through the red light, and that both Sergeant Cargile and Glover-Armont acknowledged during

COURT OF APPEALS
OF
NEVADA

(O) 1947B

deposition testimony that each did not see the other until each entered the intersection due to the hill. The district court denied summary judgment based on this factual dispute and evidence in the record, concluding that an officer responding to an emergency still has a duty to notify the public that he is responding to an emergency, and that the fact that the hill obstructed Glover-Armont's view of northbound traffic and Sergeant Cargile's view of eastbound traffic created a genuine issue of material fact as to whether Sergeant Cargile entered the intersection in a safe manner for the public.

North Las Vegas moved for reconsideration, citing two additional cases and arguing that discretionary-act immunity applied even if Sergeant Cargile abused his discretion. Glover-Armont opposed the motion for reconsideration, arguing that North Las Vegas' motion was flawed because it incorrectly relied on an exception to the discretionary-act immunity doctrine for intentional torts. After a hearing, the district court granted North Las Vegas' motion for reconsideration.

The district court thereafter granted summary judgment as to Glover-Armont's negligence claim against North Las Vegas, finding, without addressing NRS 484B.700, that Sergeant Cargile used his individual judgment in deciding whether and how to proceed against the red traffic signal and that his decisions were discretionary, such that North Las Vegas was entitled to discretionary-act immunity. And given that finding, the district court also concluded that summary judgment was warranted as to Glover-Armont's remaining claims against North Las Vegas for negligent entrustment, vicarious liability, and negligent hiring, training, and supervision. To support its overall decision, the district court cited public policy concerns, noting that Sergeant Cargile acted to protect the public, enforce the law, and apprehend criminals.

## ANALYSIS

The primary issue raised in this appeal is whether discretionary-act immunity, a qualified immunity, provided North Las Vegas with an affirmative defense to Glover-Armont's claims.[1]

---

[1]Our dissenting colleague suggests that, before addressing discretionary-act immunity, we must decide whether a private analogue to the conduct at issue here exists, such that Nevada can be said to have waived its sovereign immunity under NRS 41.031. But the private-analogue doctrine is a creature of statutory interpretation, *see Feres v. United States*, 340 U.S. 135, 141-42 (1950) (construing the Federal Tort Claims Act to require a private analogue), and Nevada's appellate courts have not imposed a private-analogue requirement on NRS 41.031. Instead, Nevada's jurisprudence in this area proceeds from the principle that the State has waived sovereign immunity and looks directly to whether discretionary-act immunity applies. *See, e.g., Ortega v. Reyna*, 114 Nev. 55, 62, 953 P.2d 18, 23 (1998), *abrogated in part on other grounds by Martinez v. Maruszczak*, 123 Nev. 433, 168 P.3d 720 (2007). And our supreme court has ruled against the State as to liability without addressing the private-analogue doctrine even where a private analogue may arguably not exist. *See, e.g., Butler v. Bayer*, 123 Nev. 450, 464-66, 168 P.3d 1055, 1065-67 (2007) (concluding that genuine issues of material fact remain with regard to whether the state negligently released an inmate); *Golconda Fire Prot. Dist. v. Cty. of Humboldt*, 112 Nev. 770, 774-75, 918 P.2d 710, 712-13 (1996) (remanding for an accounting to determine whether a county wrongfully retained interest on taxes that it collected); *cf. Tobin v. Fish*, 161 Wash. App. 1019 (Ct. App. 2011) (unpublished) (concluding that Washington did not require a private analogue because its supreme court had ruled against the government as to liability for conduct having no private analogue).

Moreover, even if we were to adopt a private-analogue requirement for NRS 41.031, despite the dissent's suggestion to the contrary, recent federal jurisprudence on this topic would support a determination that there is a private analogue to the conduct at issue in this case. Indeed, the United States Supreme Court has explained that courts should construe the conduct and claims at issue in a case broadly in searching for a private analogue. *See United States v. Olson*, 546 U.S. 43, 46-47 (2005) (holding that the private-analogue inquiry is not restricted to "the *same*

We review a district court's order granting summary judgment de novo and will uphold summary judgment only where "the pleadings and other evidence on file demonstrate that no genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (alteration in original) (internal quotation marks omitted). We review the pleadings and other proof in a light most favorable to the nonmoving party. *Id.* at 732, 121 P.3d at 1031. Genuine issues of material fact remain if a reasonable jury could return a verdict in favor of the nonmoving party based on the evidence presented. *Butler v. Bayer*, 123 Nev. 450, 457-58, 168 P.3d 1055, 1061 (2007). However, Nevada's appellate courts are reluctant to affirm summary judgment on negligence claims because the question of whether a defendant exercised reasonable care is nearly always a question of fact for the jury. *Id.* at 461, 168 P.3d at 1063.

---

*circumstances*," but extends "further afield" and providing, as an example, that a negligence claim against a private person who undertakes a duty to warn is a private analogue for the government's failure to maintain a lighthouse). And in that vein, federal courts have found private analogues in situations nearly identical to the present case. *See, e.g., Lee v. United States*, 570 F. Supp. 2d 142, 150-52 (D.D.C. 2008) (determining that a private analogue existed for negligent police chases based on general traffic regulations).

Finally, we note that neither the parties nor the amicus curiae address the private-analogue doctrine, nor did the district court. While this is unsurprising given that, as detailed above, this doctrine does not impact our consideration of the discretionary-act immunity issue presented here, because the dissent's sua sponte discussion of the doctrine raises jurisdictional questions, we have briefly addressed this matter here.



(O) 1947B

On appeal, Glover-Armont argues that the district court erred by granting summary judgment, asserting questions of fact remain as to whether Sergeant Cargile used due care, pursuant to NRS 484B.700, in proceeding through the intersection against a red traffic signal. North Las Vegas counters that the district court correctly granted summary judgment because, under NRS 41.032(2), discretionary-act immunity bars Glover-Armont's claims.[2]

In addressing these arguments, we first consider the applicability of Nevada's discretionary-act immunity doctrine to a police officer acting pursuant to NRS 484B.700's exemptions, and thereafter determine the scope of NRS 484B.700(4)'s duty of care and whether summary judgment was appropriate under these facts.[3]

---

[2]The International Municipal Lawyers Association filed an amicus brief, but we do not specifically address the arguments presented therein, as they are substantially similar to those raised in North Las Vegas' answering brief.

[3]We have also reviewed Glover-Armont's argument that the district court improperly considered her traffic citation as evidence when granting summary judgment. The record shows the district court did not consider her traffic citation, but instead considered her nolo contendere plea. We conclude that the district court improperly considered Glover-Armont's nolo contendere plea to her traffic citation. *See* NRS 48.125(2) ("Evidence of a plea of nolo contendere or of an offer to plead nolo contendere to the crime charged or any other crime is not admissible in a civil or criminal proceeding involving the person who made the plea or offer."). We caution the district court against considering inadmissible evidence when deciding summary judgment motions. *See Henry Prods. Inc. v. Tarmu*, 114 Nev. 1017, 1019, 967 P.2d 444, 445 (1998) ("Evidence introduced in support of or opposition to a motion for summary judgment must be admissible evidence.").

*Discretionary-act immunity*

Nevada generally waives sovereign immunity. NRS 41.031. However, a doctrine known as discretionary-act immunity, codified as NRS 41.032(2), provides an exception to this general waiver through a qualified immunity for state agencies and their employees who perform discretionary acts. *City of Boulder City v. Boulder Excavating, Inc.*, 124 Nev. 749, 754, 756, 191 P.3d 1175, 1178, 1179-80 (2008). In *Martinez v. Maruszczak*, Nevada adopted the federal two-part *Berkovitz-Gaubert*[4] test for determining whether a state actor is protected by discretionary-act immunity. 123 Nev. 433, 445-47, 168 P.3d 720, 728-29 (2007). Under the *Berkovitz-Gaubert* test, the discretionary-act immunity doctrine applies if the decision "(1) involve[s] an element of individual judgment or choice and (2) [is] based on considerations of social, economic, or political policy." *Id.* at 446-47, 168 P.3d at 729. Since adopting the federal *Berkovitz-Gaubert* test, Nevada's appellate courts have yet to apply this test to actions permitted by NRS 484B.700.

A critical preliminary step in the discretionary-act immunity analysis is identifying the specific government action challenged before turning to the *Berkovitz-Gaubert* test. *See Young v. United States*, 769 F.3d 1047, 1053-54 (9th Cir. 2014) (providing that a district court must first identify the specific agency action challenged before turning to the *Berkovitz-Gaubert* test); *cf. N. Nev. Ass'n of Injured Workers v. Nev. State Indus. Ins. Sys.*, 107 Nev. 108, 113, 807 P.2d 728, 731 (1991).

As a threshold matter, we conclude that the district court incorrectly applied the *Berkovitz-Gaubert* test because it failed to pinpoint

---

[4]*United States v. Gaubert*, 499 U.S. 315, 322-25 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536-39 (1988).

Glover-Armont's specific allegations within her complaint. *See Young*, 769 F.3d at 1053 ("To identify the particular agency conduct with which [p]laintiffs take issue, we look to the allegations of [p]laintiffs' complaint."); *see also N. Nev. Ass'n of Injured Workers*, 107 Nev. at 113, 807 P.2d at 731 ("In analyzing respondents' entitlement to immunity under [NRS 41.032], it is necessary to determine whether the acts alleged in appellants' amended complaint are properly categorized as discretionary."). Below, North Las Vegas framed Glover-Armont's allegation as a blanket challenge to Sergeant Cargile's decision to enter the intersection against a red traffic signal in an emergency, when in fact Glover-Armont alleged that the conditions and manner in which Sergeant Cargile proceeded through the red traffic signal did not adhere to NRS 484B.700's standard of care. The district court did not address NRS 484B.700 and did not determine whether the statute requires police officers to use their own judgment when acting under the statute's exemptions. Accordingly, we turn to the first prong of the *Berkovitz-Gaubert* test with Glover-Armont's precise allegations in mind and determine whether NRS 484B.700 confers discretion.

*NRS 484B.700 does not confer discretion*

Glover-Armont contends that the duty to comply with NRS 484B.700's requirements is not discretionary. We agree.

We review questions of law de novo. *Clark Cty. Sch. Dist. v. Payo*, 133 Nev. ___, ___, 403 P.3d 1270, 1275 (2017). In Nevada, an act is discretionary if law or policy allows the public official to use his or her own judgment and deliberation in acting. *Ransdell v. Clark Cty.*, 124 Nev. 847, 856-57, 858, 192 P.3d 756, 763, 764 (2008) (holding that Clark County's actions were discretionary under the *Berkovitz-Gaubert* test because the Clark County Code provided its officials with the discretion to take action). NRS 484B.700 allows an officer to proceed through a red traffic signal when

COURT OF APPEALS
OF
NEVADA

(O) 1947B

responding to an emergency, but requires the officer to "slow[ ] down as may be necessary for safe operation" and to use either "(a) [a]udible and visual signals; or (b) [v]isual signals only, as required by law." Moreover, NRS 484B.700(4) expressly provides that it does not relieve the officer from "the duty to drive with due regard for the safety of all persons" or "protect the [officer] from the consequences of [the officer's] reckless disregard for the safety of others."

Nevada's appellate courts have not addressed whether this statute confers discretion or requires the state actor to abide by a nondiscretionary standard of care. Other jurisdictions have addressed similar issues with mixed outcomes. For example, North Las Vegas asserts that this court should follow the Minnesota Supreme Court's reasoning in *Vassallo v. Majeski*, 842 N.W.2d 456 (Minn. 2014).

In *Vassallo*, the Minnesota Supreme Court determined that, as relevant here, Minnesota's emergency vehicle statute conferred discretion, and thus, discretionary-act immunity barred the plaintiff's claims. *Id.* at 463-66. The plaintiff sued for injuries sustained after a police officer responding to an emergency sped through an intersection against a red traffic signal and collided with the plaintiff's vehicle. *Id.* at 460. Minnesota's emergency vehicle statute provided that when an emergency vehicle approaches a red traffic signal it must "slow down as necessary for safety, but may proceed cautiously past such red or stop sign or signal after sounding siren and displaying red lights." *Id.* at 461 n.2. The *Vassallo* court concluded that the requirement to "slow down as necessary for safety" was conditioned upon the driver's determination of a safe speed. *Id.* at 463. In addition, the court likened the term "proceed cautiously" to a duty to use due care to avoid a collision and concluded that a due care requirement calls

for the use of independent judgment. *Id.* Thus, the court concluded that these requirements conferred a discretionary duty to which immunity applied.[5] *Id.* at 463-64.

However, other courts addressing similar situations have determined that an emergency vehicle statute does not confer discretion in circumstances similar to the case at hand. *See Legue v. City of Racine*, 849 N.W.2d 837, 859 (Wis. 2014). For example, in *Legue*, the plaintiff sued a police officer and the City of Racine for injuries sustained in an accident where the police officer entered an intersection with a red traffic signal en route to an emergency call. *Id.* at 842-43. The police officer had lights and sirens engaged, but a building blocked her view of oncoming traffic. *Id.* After the jury returned a verdict in favor of the plaintiff, the lower court granted defendant's motion for judgment notwithstanding the verdict based upon discretionary-act immunity. *Id.* at 844.

On appeal, the Wisconsin Supreme Court considered whether the police officer was entitled to immunity based upon subsection 5 of Wisconsin's emergency vehicle statute, Wis. Stat. Ann. § 346.03 (West 2015),[6] and a city policy, which both required emergency responders to drive with "due regard under the circumstances" for the public's safety. *Id.* at 858. The court concluded that Wis. Stat. Ann. § 346.03(5) (West 2015) and the city policy imposed a nondiscretionary duty to drive with "due regard

---

[5]The *Vassallo* court also examined a Minnesota county sheriff's office policy that required officers to drive with due regard and summarily concluded that the term "due regard" invited independent judgment, like the term "due care." 842 N.W.2d at 461 n.3, 464.

[6]The Wisconsin statute has been amended since the Wisconsin Supreme Court entered *Legue, see* 2015 Wis. Laws, Act 102, at 807-08, but the amendments were to other portions of the statute.

under the circumstances" when responding to an emergency. *Id.* at 859-60, 862. In reaching this conclusion, the court reasoned that § 346.03(5)'s language qualified the privileges contained in the earlier part of the statute allowing the emergency responder to disregard speed limits and proceed through red traffic signals, and that the only reasonable interpretation of § 346.03(5)'s conditions was to impose liability on the governmental actor. *Id.* at 851 (discussing § 346.03(5)'s declaration that "the exemptions granted the operator of an authorized emergency vehicle by this section do not relieve such operator from the duty to drive or ride with due regard under the circumstances for the safety of all persons" and explaining that "[t]his language leads us to conclude that an exemption or privilege begets immunity and a duty begets liability"); *see* Wis. Stat. Ann. § 346.03(1)-(2) (West 2015). Further, the court reasoned that "§ 346.03(5)['s] declar[ation] that the exemptions or privileges '*do not relieve* such operator from the duty to drive with due regard'" was mandatory language. *Legue*, 849 N.W.2d at 858. The court ultimately concluded that the duty to maintain a particular standard of care is not discretionary, and reinstated the jury verdict. *Id.* at 858-59, 862.

Wisconsin's statute, like Nevada's statute, states that "[t]he exemptions granted the operator of an authorized emergency vehicle by this section *do not relieve* such operator from the duty to drive or ride with due regard under the circumstances for the safety of all persons, nor do they protect such operator from the consequences of his or her reckless disregard for the safety of others." Wis. Stat. Ann. § 346.03(5) (West 2015) (emphasis added); *see also* NRS 484B.700(4) ("The provisions of this section do not relieve the driver from the duty to drive with due regard for the safety of all persons and do not protect the driver from the consequences of the driver's

reckless disregard for the safety of others."). And while Minnesota's statute shares some similarities with both Nevada's and Wisconsin's statutes, it is distinctly distinguishable insofar as it does not require an emergency vehicle operator to drive with due regard for the public's safety, but rather states the emergency vehicle operator "may proceed cautiously." Minn. Stat. Ann. § 169.03(2) (West 2016); NRS 484B.700(4); Wis. Stat. Ann. § 346.03(5) (West 2015). Of course, in *Vassallo*, the court likened the term "proceed cautiously" to a duty to use due care, 842 N.W.2d at 463, and arguably, a duty to use due care is similar to Nevada's duty to drive with due regard.

But critically, Minnesota's statute uses the phrase "proceed cautiously" in an open-ended manner, which, as the Minnesota Supreme Court noted, indicates that officers are allowed to use their personal judgment in order to determine what constitutes caution under the circumstances. *Vassallo*, 842 N.W.2d at 463. Conversely, Nevada's statute, like Wisconsin's statute, uses mandatory language in providing that the privileges set forth therein "do not relieve" the driver from the "duty to drive with due regard," NRS 484B.700(4); *see* Wis. Stat. Ann. § 346.03(5), which is indicative of a nondiscretionary duty to act in a certain manner and liability for failing to do so. Indeed, as the Wisconsin Supreme Court reasoned in *Legue*, where there is a duty, there is also liability. *See* 849 N.W.2d at 851 (asking rhetorically, "[w]hy would the legislature exempt an operator of an authorized emergency vehicle from complying with certain rules of the road and impose a duty of due regard unless a violation of the duty can result in liability?").

The reasoning in *Legue* and the similarity between Nevada's and Wisconsin's emergency vehicle statutes are persuasive here, and we

therefore conclude that NRS 484B.700(4) imposes a mandatory duty, which gives rise to liability if breached.[7] *See id.* Accordingly, we hold that a police officer's duty to drive with due care when responding to an emergency is mandatory, not discretionary, under the first prong of the *Berkovitz-Gaubert* test.[8] *Cf. N. Nev. Ass'n of Injured Workers v. Nev. State Indus. Ins. Sys.*, 107 Nev. 108, 114, 807 P.2d 728, 731 (1991) (explaining that mandatory duties entail little or no discretion, and that the discretionary-act immunity doctrine does not apply to such obligatory acts). This conclusion is consistent with the approach taken by several other

---

[7]For the same reason, this court is unpersuaded by the Minnesota court's conclusion that officers were afforded discretion under the department policy discussed above.

[8]To the extent that Glover-Armont asserts that North Las Vegas policy also imposes a nondiscretionary duty upon a police officer to utilize both lights and sirens when responding to an emergency, we conclude that Glover-Armont fails to support this argument. In particular, while testimony in the record supports Glover-Armont's assertion, it is impossible for this court to fully review this matter, as she failed to include North Las Vegas' policy in the record. *Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 603, 172 P.3d 131, 135 (2007) (noting appellant has the burden of providing this court with an adequate appellate record, and when the appellant "fails to include necessary documentation in the record, [this court] necessarily presume[s] that the missing portion supports the district court's decision"). Moreover, an officer does not breach the duty to drive with due regard for the safety of all persons merely by failing to operate his siren. *See* NRS 484D.400(5)-(6) (providing, among other things, that when an officer uses warning lamps without sounding the siren, the officer "shall be deemed to have adequately warned pedestrians and other drivers of [the officer's] approach for purposes of determining whether the [officer] met the duty to drive with due regard for the safety of all persons pursuant to NRS 484B.700").

jurisdictions.[9] *See Biscoe v. Arlington Cty.*, 738 F.2d 1352, 1363 (D.C. Cir. 1984); *Legue*, 849 N.W.2d at 859; *Mason v. Bitton*, 534 P.2d 1360, 1365 (Wash. 1975) (en banc).[10]

In reaching this conclusion, we reject a broad-based view of discretionary-act immunity that would render any accident involving a public vehicle responding to an emergency nonactionable. We are mindful that the Legislature intended to give emergency vehicles privileges to allow swift response to those in need; however, the Legislature and our courts have long held that such privileges are to be exercised while keeping the safety of all members of the public in mind. *See* NRS 484B.700(4); *Johnson v. Brown,* 75 Nev. 437, 445, 345 P.2d 754, 758 (1959). Moreover, this holding is in line with the purpose behind Nevada's waiver of sovereign immunity, which is to equally compensate victims of negligence regardless of whether

---

[9]Importantly, cases in other jurisdictions which conclude that immunity applies to protect police officers from claims arising from a traffic accident involving an emergency responder are distinguishable. For example, while discretionary-act immunity is available to first responders in Virginia, it does not immunize them from suit, but instead, elevates the standard for liability from negligence to gross negligence. *Colby v. Boyden,* 400 S.E.2d 184, 186-87 (Va. 1991). And Texas' immunity doctrine likewise imposes liability for reckless conduct, but does so based on its express exclusion of emergency vehicle operators from the waiver of immunity for negligence. *City of Amarillo v. Martin,* 971 S.W.2d 426, 430 (Tex. 1998).

[10]Likewise, other jurisdictions also hold immunity does not apply to bar a cause of action when a police officer's negligence causes harm to an innocent member of the public, albeit on slightly different grounds. *Patrick v. Miresso,* 848 N.E.2d 1083, 1086-87 (Ind. 2006); *Horta v. Sullivan,* 638 N.E.2d 33, 36-37 (Mass. 1994); *Jones v. Chieffo,* 700 A.2d 417, 420 (Pa. 1997); *Haynes v. Hamilton Cty.,* 883 S.W.2d 606, 611 (Tenn. 1994); *Willden v. Duchesne Cty.,* 217 P.3d 1143, 1145-46 (Utah Ct. App. 2009).

the negligent actor is a state official or private citizen. *See Martinez*, 123 Nev. at 444, 168 P.3d at 727 (discussing the purpose of Nevada's waiver of sovereign immunity).

Given the foregoing, because we hold that NRS 484B.700 does not afford discretion, North Las Vegas was not entitled to discretionary-act immunity as to Glover-Armont's negligence, negligent entrustment, and vicarious liability claims, and we need not reach the second prong of the *Berkovitz-Gaubert* test.[11] Accordingly, we conclude that the district court erred by granting North Las Vegas summary judgment as to Glover-Armont's negligence, negligent entrustment, and vicarious liability claims based on that conclusion.[12]

---

[11]In light of our conclusion that North Las Vegas is not entitled to discretionary-act immunity, we need not address North Las Vegas' arguments that discretionary-act immunity applies even when a public official abuses his or her discretion, and that the bad-faith and intentional-torts exceptions do not bar immunity in this case. *Franchise Tax Bd. of State of Cal. v. Hyatt*, 133 Nev. ___, ___, 407 P.3d 717, 733 (2017) (holding that NRS 41.032 does not protect against intentional torts or bad-faith misconduct), *petition for cert. filed*, ___, U.S.L.W. ___ (U.S. Mar. 12, 2018) (No. 17-1299).

[12]With regard to Glover-Armont's negligent hiring, training, and supervision claim, respondents cite *Bryan v. Las Vegas Metro. Police Dep't*, 349 F. App'x 132, 134 (9th Cir. 2009), for the argument that North Las Vegas' training decisions involve policy judgments of the type the discretionary-function exception is designed to shield, and Glover-Armont failed to address that case in her reply brief or otherwise offer specific argument as to why North Las Vegas' failure to adequately train Sergeant Cargile did not involve a shielded policy judgment. Thus, Glover-Armont waived any argument that North Las Vegas was not immune from Glover-Armont's negligent hiring training and supervision claims. *See State ex rel. State Bd. of Equalization v. Bakst*, 122 Nev. 1403, 1417 n.41, 148 P.3d 717, 726 n.41 (2006) (concluding appellant waived its argument when it did not refute respondent's argument in its reply brief). Therefore, we affirm

With this in mind, we now turn to the parties' arguments regarding whether genuine issues of fact remain to preclude summary judgment.

*Summary judgment was improper*

Glover-Armont asserts that there are several issues of material fact that preclude summary judgment because the facts, when viewed in a light most favorable to Glover-Armont, demonstrate that Sergeant Cargile failed to proceed with due care as required by NRS 484B.700(4).

NRS 484B.700(4) states that a police officer traveling through a red traffic signal in an emergency is not relieved "from the duty to drive with due regard" for the public's safety nor protected from the consequences of the officer's reckless disregard for the public's safety. The Nevada Supreme Court has previously interpreted similar language within a Reno Municipal Ordinance[13] to impose an ordinary negligence standard of liability, holding that an emergency responder has a "duty to be on the lookout at all times for the safety of the public whose peril is increased by their exemptions from the rules of the road." *Johnson*, 75 Nev. at 445, 345 P.2d at 758.

In *Johnson*, a firefighter responding to an emergency sped through an intersection with obstructed visibility without stopping at a stop

---

summary judgment as to Glover-Armont's negligent hiring, training, and supervision claim.

[13]Reno Municipal Code (RMC) § 10-60 (1954) (allowing emergency responders certain exemptions from the rules of the road and providing that the ordinance's exemptions "shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the street, nor shall it protect the driver of any such vehicle from the consequence of a reckless disregard for the safety of others").

sign and collided with another driver whose passenger then brought suit. *Id.* at 439, 345 P.2d at 755. The jury found in favor of the plaintiff, and the firefighter appealed arguing that the Reno Municipal Ordinance requiring him to "drive with due regard for the safety of others" was met because he was utilizing lights and sirens. *Id.* at 439-40, 345 P.2d at 755 (internal quotation marks omitted). The supreme court disagreed concluding that the Reno Municipal Ordinance imposed an ordinary negligence standard of liability and opining that the government is better able to bear the burden of tort liability than an individual to bear loss from an accident. *Id.* at 442-45, 345 P.2d at 756-58.

While *Johnson* was decided before NRS 41.032, the discretionary-act immunity statute, was enacted, 75 Nev. at 437, 345 P.2d at 754; 1965 Nev. Stat., ch. 505, § 1-7, at 1413-15, we look to *Johnson* to determine the standard for liability applicable here given our conclusion that immunity does not apply. Because the language of the Reno ordinance is nearly identical to NRS 484B.700(4), we conclude that NRS 484B.700(4) imposes an ordinary negligence standard of liability. This conclusion is consistent with other jurisdictions that have interpreted similar language to impose an ordinary negligence standard of liability. *See Rutherford v. State*, 605 P.2d 16, 18-19, 18 n.5 (Alaska 1979); *City of Little Rock v. Weber*, 767 S.W.2d 529, 533 (Ark. 1989); *Barnes v. Toppin*, 482 A.2d 749, 755 (Del. 1984); *City of Baltimore v. Fire Ins. Salvage Corps*, 148 A.2d 444, 447 (Md. 1959); *City of Kalamazoo v. Priest*, 49 N.W.2d 52, 54 (Mich. 1951); *Cairl v. City of St. Paul*, 268 N.W.2d 908, 912-13 (Minn. 1978); *Wright v. City of Knoxville*, 898 S.W.2d 177, 179-80 (Tenn. 1995); *Estate of Cavanaugh v. Andrade*, 550 N.W.2d 103, 114-15 (Wis. 1996).

Below, the parties conceded that a hill blocked their respective views, but they disputed everything else about the cause and circumstances of the accident in light of their obstructed views, including whether Glover-Armont saw Sergeant Cargile's lights, whether Sergeant Cargile engaged his siren, whether Glover-Armont had her headlights on, whether Cargile proceeded through the intersection when Glover-Armont was already in the intersection, and who hit whom. And conflicting evidence supported the parties' respective positions with regard to whether Sergeant Cargile gave adequate warning of his approach and what precautions he took before entering the intersection. Given this conflicting evidence, as the district court originally found, genuine issues of fact remain as to whether Sergeant Cargile violated his duty to drive with due regard, such that summary judgment was unwarranted. *See Butler v. Bayer*, 123 Nev. 456, 461, 168 P.3d 1055, 1063 (2007) (noting Nevada's appellate courts are reluctant to affirm summary judgment on negligence claims because the question of whether a defendant exercised reasonable care is nearly always a question of fact for the jury); *Cf. Legue*, 849 N.W.2d at 842-43, 862 (reinstating a jury verdict that found a police officer negligent where she, utilizing lights and sirens, entered an intersection against a red traffic signal en route to an emergency call when a building obstructed her view of oncoming traffic).

*CONCLUSION*

We conclude that the district court erred by granting summary judgment based upon discretionary-act immunity. NRS 484B.700 allows an officer to proceed through a red traffic signal in an emergency but imposes mandatory conditions on that privilege, including the duty to drive with due regard of the public's safety. Here, the parties contest whether Sergeant Cargile drove with due regard for the public's safety. Because a jury could conclude Sergeant Cargile did not proceed with due regard, summary

judgment was improper. Accordingly, we reverse summary judgment and remand this matter to the district court for further proceedings on Glover-Armont's negligence, negligent entrustment, and vicarious liability claims.[14]

_____, C.J.
Silver

I concur:

_____, J.
Gibbons

_____

[14]In light of our disposition of this appeal, we do not reach Glover-Armont's argument that the district court improperly granted reconsideration of its original oral denial of North Las Vegas' motion for summary judgment. But we vacate the district court's order awarding costs to North Las Vegas as the prevailing party. *Doud v. Las Vegas Hilton Corp.*, 109 Nev. 1096, 1106, 864 P.2d 796, 802 (1993) (vacating the district court's costs award made to the prevailing party in light of reversal), *superseded by statute on other grounds*, NRS 651.015, *as recognized in Estate of Smith v. Mahoney's Silver Nugget, Inc.*, 127 Nev. 855, 858-59, 265 P.3d 688, 691 (2011).

TAO, J., concurring in part and dissenting in part:

I agree that the majority properly resolves the issue of sovereign immunity as the parties have framed it. But I believe that the parties have framed this case all wrong.

In the words of a fictional television police detective, "all the pieces matter." (Detective Lester Freamon, *The Wire*, HBO 2001). This is especially true when dealing with the "Byzantine complexity of sovereign-immunity law," *Hall v. McRaven*, 508 S.W.3d 232, 245 (Tex. 2017) (Willett, J., concurring), a field which includes a general rule of immunity, subject to a partial statutory waiver, subject to exceptions to the waiver, within which lie yet more exceptions to those exceptions. When working through these layers of statutory text, we must take care that "no part of [the] statute should be rendered nugatory, nor any language turned to mere surplusage, if such consequences can properly be avoided." *Indep. Am. Party v. Lau*, 110 Nev. 1151, 1154, 880 P.2d 1391, 1392 (1994) (quotation marks omitted); *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176 (2012).

The parties focus their briefing on whether the "discretionary function" exception applies. But in doing so, they overlook critical pieces of the analysis that should apply to this appeal that, when properly applied, lead to a very different result than they propose. Normally, we limit ourselves to the arguments that the parties make and the relief they request, because the parties are generally allowed to frame and present their own case the way they want. But when that approach causes us to gloss over important parts of a statute that would otherwise apply—thereby suggesting to other parties or courts tackling this issue that the right thing to do is to skip over those statutory provisions as well—then "[t]he ability of this court to consider relevant issues *sua sponte* in order to prevent plain

error is well established. Such is the case where [clearly controlling law] was not applied by the trial court." *Bradley v. Romeo*, 102 Nev. 103, 105, 716 P.2d 227, 228 (1986) (internal citation omitted); *see Mardian v. Greenberg Family Tr.*, 131 Nev. 730, 733-34, 359 P.3d 109, 111 (2015) (on de novo review of denial of summary judgment, the court is not limited to only what the parties expressly argue: "While the arguments made by the parties focus on Nevada law, the issue of whether the Arizona law should have been applied must also be addressed."); *Nev. Power Co. v. Haggerty*, 115 Nev. 353, 365 n.9, 989 P.2d 870, 877-78 n.9 (1999) (explaining that the court would resolve an issue of statutory interpretation not litigated below "in the interests of judicial economy").

I therefore write separately to address the way I think this case should have come out had the parties properly understood the statute in all of its component parts. "[T]he bottom line is understanding the process. If you don't understand the process, you'll never reap the rewards." Donald J. Trump, *How to Get Rich* 74 (2004).

Nevada's statutory waiver of sovereign immunity is set forth in NRS 41.031, which specifies that the State consents to waive immunity "in accordance with the same rules of law as are applied to civil actions against natural persons and corporations." NRS 41.031(1). The parties ignore this statutory language—the language that initially defines the scope and reach of any waiver of immunity—and focus instead on a later subsection that contains a specific exception to the waiver, namely, the discretionary function exception described in NRS 41.032(2). But focusing on whether an exception to the waiver applies only makes sense if it's clear that immunity has been waived in the first place. In this case, that's not clear at all. When the statute is properly analyzed in its entirety, I would affirm the district

court's grant of summary judgment in its entirety and I therefore respectfully concur in part and dissent in part.

## I.

The United States is sovereignly immune and no citizen can sue it for any alleged negligence unless it consents to such suit. Prior to 1946, the only avenue through which a private citizen could seek redress for an injury inflicted by governmental negligence was to petition Congress for compensation through a "private bill."[1] *See Feres v. United States*, 340 U.S. 135, 139-40 (1950). Then, following the crash of a B-25 into the Empire State Building during foggy weather, Congress statutorily enacted the Federal Tort Claims Act (FTCA), which "constitutes a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances." *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007) (quotation marks omitted); see 28 U.S.C. § 2674. This waiver is not complete; "the United States can be sued only to the extent that it has waived its immunity." *United States v. Orleans*, 425 U.S. 807, 814 (1976).

States, too, possess sovereign immunity, unless they waive it statutorily. Nevada's statutory waiver of sovereign immunity under NRS 41.032 "mirrors" the scope of the federal waiver under the FTCA, and the Nevada Supreme Court has expressly adopted federal judicial precedent applying the FTCA. *See Martinez v. Maruszczak*, 123 Nev. 433, 444, 168 P.3d 720, 727 (2007). Under both, immunity is waived only to the extent

---

[1] As a recent example, Congressional action was required for "downwinders" to receive compensation for exposure to radiation from atomic bomb testing at the Nevada Test Site during the 1950s, because the United States has not waived sovereign immunity for any injuries arising from the effects of military weapons testing.

expressly outlined by statute and "must be 'construed strictly in favor of the sovereign' and not 'enlarge[d] ... beyond what the language requires.'" *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992) (internal citation omitted).

In analyzing the scope of a waiver, two competing considerations are at stake. On the one hand is the foundational idea that citizens have inherent liberty to pursue their vision of happiness free from government interference or coercion, and whenever arbitrary or irrational—here, allegedly negligent—governmental conduct inflicts injury on the innocent and unsuspecting, courts ought to rein in the conduct and provide fair redress to the victims. And what could be more arbitrary than a case like this which alleges that a government vehicle exercising official government power negligently plowed through a major intersection, quite possibly in violation of law and policy regarding police sirens, inflicting serious physical injury on an unsuspecting motorist? On the other hand, though, is the idea that overly abundant lawsuits instill "legal fear" even in those who are not sued, chilling initiative and inhibiting "people [from] doing what they know is right because they do not feel free to do so." Philip K. Howard, *Is Civil Litigation a Threat to Freedom?*, 28 Harv. J. Law & Pub. Pol'y 97, 102 (2004). I would think that if there's anyone in our society whom we don't want to feel inhibited in vigorously doing what they know is right, it ought to be a police officer racing to stop a felony in progress.

Here is the line that must be straddled in a case like this: we want police officers to courageously take risks and perhaps even engage in some level of derring-do to shield us from danger; but we also want any passersby that they irresponsibly injure along the way to have access to fair redress. The question becomes how to achieve one without chilling the other. If we go too far in immunizing government, then government officials

get to act with impunity: "[t]he doctrine of sovereign immunity, by insulating imprudence, is innately unfair to those wronged." *Hall*, 508 S.W.3d at 245 (Willett, J., concurring). But if we go too far in the other direction and allow too many suits to create too much liability, then every injury warrants a payout and we drive up costs for everyone, since "[e]ven frivolous claims require the . . . Government to expend administrative and litigation costs, which ultimately fall upon society at-large." *United States v. Kwai Fun Wong*, ___ U.S. ___, ___, 135 S. Ct. 1625, 1639 (2015) (Alito, J., dissenting). Worse, the police might not respond so quickly the next time someone dials 9-1-1, and we all end up paying more taxes for less effective service.

## II.

To resolve this dilemma and balance these competing interests, the Nevada Legislature enacted NRS 41.031, embodying a general "Waiver of Sovereign Immunity." That general waiver is followed by certain "Conditions and Limitations on Actions" set forth in NRS 41.032 *et seq.*, including the "discretionary function" exception of NRS 41.032(2). Under this exception, when immunity has generally been waived, tort suits alleging negligence by government actors are permitted to proceed unless the governmental action: (1) involves an element of individual judgment or choice and (2) is based on considerations of social, economic, or political policy. *Martinez*, 123 Nev. at 446-47, 168 P.3d at 729 (citing *Berkovitz v. United States*, 486 U.S. 531 (1988); *United States v. Gaubert*, 499 U.S. 315 (1991)).

In analyzing the effect of these statutes on the case at hand, the parties jump straight to the "discretionary function" exception of NRS 41.032(2) and argue whether it applies throughout their briefing. But I

would take a different approach and start in an entirely different place: at the very beginning.

To me, the proper starting point for actions alleging negligence by police officers is here: by statute, Nevada consents to waive immunity "in accordance with the same rules of law as are applied to civil actions against natural persons and corporations." NRS 41.031(1). The purpose of this waiver is to "compensate victims of government negligence in circumstances like those in which victims of private negligence would be compensated." *Martinez*, 123 Nev. at 444, 168 P.3d at 727. This isn't just a broad statement of intent. It's a specific legal doctrine that limits the scope of the waiver. It means that Nevada's waiver only extends to governmental actions "like those" that private citizens could also be sued for, and the government is liable in the same way that a private actor would be. Under the identical language of the FTCA, federal courts have held that there is no waiver of immunity "for claims against the government based on governmental action of the type that private persons could not engage in and hence could not be liable for under local law." *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012) (quotation marks omitted).

This matters here because private citizens can do a lot of things that governments also do, but they don't engage in police work. Quite to the contrary, much police work involves things that are not anything at all "like" things that private citizens can legally do. *See* Stanton R. Gallego, Note, *An Examination of the Federal Tort Claims Act's "Private Person" Standard as It Applies to Federal Law Enforcement Activities*, 76 Brook. L. Rev. 775, 784 (2011) ("no private citizen is truly comparable to a law enforcement officer"). Many police activities represent "quintessential examples of government discretion in enforcing the criminal law." *Pooler v. United States*, 787 F.2d 868, 871 (3d Cir. 1986), *abrogated on other grounds*

*by Millbrook v. United States*, 569 U.S. 50 (2013); *see Kelly v. United States*, 924 F.2d 355, 362 (1st Cir. 1991). Thus, when the conduct targeted by suit involves law enforcement activity, courts must apply a different doctrine altogether, commonly referred to as the "private analogue" doctrine, and unfortunately expressed in rather tortured phrasing: immunity is waived only with respect to police actions that would result in liability if those actions were performed by a private actor "under like circumstances." *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955); *see Liranzo*, 690 F.3d at 84-89. Or, described in a somewhat different but no less tortured manner: if an "analogous form of liability exists" had the same negligence been committed by a private actor, then sovereignty has been waived and the state may be sued for the negligent conduct in the exact same way that the private actor could have been. *United States v. Muniz*, 374 U.S. 150, 159-60 (1963); *see United States v. Olson*, 546 U.S. 43, 45-46 (2005). But if the targeted conduct was something of "the type that private persons could not engage in," then immunity has not been waived and the state may not be sued. *Liranzo*, 690 F.3d at 86. What matters is not the status of the actor as either a law enforcement officer or something else, but rather "the nature of the conduct" and whether a private analogue exists or not. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813 (1984).

The structure of the statute is thus: the private analogue test of NRS 41.031(1) determines if and when sovereign immunity may have been initially waived. If the government action has no private analogue under NRS 41.031(1), then there is no waiver and the inquiry ends. Only if the government action has a private analogue can immunity be waived, and even then only potentially so. Even where such an analogue exists, the inquiry doesn't stop there but rather continues next to the listed exceptions

Court of Appeals
of
Nevaoa

(O) 1947B

7

to immunity, including the discretionary function exception, which restores immunity if the action sprang from the exercise of government discretion as defined in NRS 41.031(2).

The point is to start with whether a waiver of sovereign immunity is even possible under NRS 41.031(1) before proceeding to whether a specific exception to that waiver exists under NRS 41.031(2). And this is where I think the parties get the analysis wrong.

### III.

Structurally, the first question at hand is whether Nevada's waiver of immunity applies at all to allegations of police negligence like those in this case. If it does not, then we don't need to even bother with asking whether the discretionary function exception applies. If the larger rule itself doesn't apply, there's no need to search for an exception within the rule designed to make the rule apply even less.

Rather than discuss how this case fits into the overarching framework of the statute, the parties instead bore in on *Martinez v. Maruszczak*, 123 Nev. 433, 168 P.3d 720 (2007). It's no wonder that they did so when Nevada cases addressing sovereign immunity are few and far between, and *Martinez* is about the best we have. But *Martinez* involved an action in medical malpractice against a government physician. To resolve the question of sovereign immunity, the Nevada Supreme Court adopted the federal discretionary function test that would have applied under the FTCA had the medical malpractice action been brought against the federal government. *Id.* at 435, 168 P.3d at 722.

The parties here assume that this is the test that must be applied to this lawsuit. But it's not. Under the FTCA, the discretionary function test is an exception to the general waiver of sovereign immunity, not the entire rule, and the general rule doesn't apply to most law

enforcement actions. *Martinez* doesn't explain this well because it doesn't expressly address whether the federal private analogue exception is also incorporated into Nevada's statutes. But then again, as a case arising in medical malpractice, *Martinez* didn't involve any kind of law enforcement activity, so there wasn't any reason for the court to gratuitously discuss or adopt a test that had nothing to do with the case at hand. For the kind of malpractice suit at stake in *Martinez*, the discretionary function exception was all that was needed.

But for the kind of lawsuit we have here, it's the wrong place to start. It seems to me that the questions raised by this appeal are these: whether this is an action in general negligence, or rather, an action involving a "law enforcement" activity; and, if the latter, whether Nevada did, or ought to, adopt the federal private analogue test to analyze whether the state is immune from suit for injuries arising from those actions. *Martinez* doesn't answer these questions one way or the other. But, notably, Nevada's waiver of sovereign immunity includes statutory language virtually identical to the language in the FTCA that the private analogue test derives from: like the FTCA, Nevada's waiver is designed "to compensate victims of government negligence in circumstances like those in which victims of private negligence would be compensated." *Martinez*, 123 Nev. at 444, 168 P.3d at 727 (quotation marks omitted); *see* 28 U.S.C. § 1364(b)(1). It seems self-evident to me that if the language of one statute tracks that of the other this closely then the two statutes ought to mean exactly the same thing, and consequently the private analogue test applies to claims against Nevada as much as it applies to claims against the federal government.

## IV.

Some police actions involve conduct that can easily be committed by private citizens; for those actions, immunity has been waived and the police can be held liable in exactly the same way that the private actor would under state law. For example, a police department that refuses to clean up coffee spills on its floor in a reasonable manner and thereby causes a passerby to slip and fall has committed negligent conduct that any private person or entity could just as easily commit. So it can be sued and, if found negligent, must pay damages just as if the same thing happened in a private office building or restaurant. Under Nevada tort law, the fact that the negligence involved the police is entirely irrelevant to the legal analysis; the legal analysis under state tort law is exactly the same whether the conduct was committed by a police officer in a police station or by a private innkeeper in the lobby of a hotel.

But a good number of law enforcement activities involve things that no private person is permitted to engage in and for which there is no private analogue. For example, police officers can trespass on private property to chase fleeing felons without fear of trespass suits; violently kick down doors and enter homes to execute no-knock search warrants without being charged with the felony crime of home invasion; and violate any number of traffic laws while responding to emergencies. Private citizens can do none of these things, at least not without serious legal repercussions ensuing. There's an easy comparison to be made between a coffee spill on a police precinct floor and a coffee spill on a private office building floor. But there's no such comparison to be made when dealing with officers chasing after fleeing felons, interrogating witnesses or suspects, collecting forensic evidence from crime scenes, or negotiating for the release of hostages. Thus, no private analogue exists for decisions that lie "at the core" of law

enforcement activity, like how a police officer decides to investigate a crime. *Kelly*, 924 F.2d at 361-62; *see Doherty v. United States*, 905 F. Supp. 54, 56 (D. Mass. 1995) (holding that government is immune from suit for decisions on how and when to seek a search warrant). Those actions involves things that police officers can do and private actors cannot and for which the government has not waived immunity and cannot be found liable under state negligence law.

Applying these principles to the case at hand, the question becomes this: is there a private analogue for the law enforcement conduct targeted by this lawsuit? If the answer is no, then sovereign immunity has not been waived, we lack subject-matter jurisdiction over the allegations, and this case cannot proceed. Jurisdiction exists only if the answer is yes.[2]

## V.

The crux of this lawsuit alleges that, while responding to an emergency call of "shots fired," Sergeant Cargile sped through a red light and entered an intersection without using his sirens to warn other drivers in violation of police policy. Glover-Armont happened to be entering the intersection perpendicularly on a green light and the two cars crashed. From these factual allegations, Glover-Armont specifically identifies four claims for relief: (1) negligence arising from Cargile's failure to use lights and sirens when entering a busy intersection against a red traffic light;

---

[2]Adding to the complexity is that the federal circuit courts of appeal have split in various different ways in how the "private analogue" test should be applied to various types of conduct. *See* Stanton R. Gallego, Note, *An Examination of the Federal Tort Claims Act's "Private Person" Standard as It Applies to Federal Law Enforcement Activities*, 76 Brooklyn L. Rev. 775, 788-801 (2011) (discussing circuit split). Fortunately, however, the facts of this case fall so clearly within the area of uniquely governmental law enforcement activity having no private analogue that the federal circuit split doesn't matter much.

(2) failure to exercise due care while driving; (3) negligent supervision and hiring by the police department; and (4) negligent entrustment of a police vehicle to Cargile.

I would analyze these claims for relief as follows. I agree with my colleagues in their conclusions about the third and fourth claims, although I would analyze them somewhat differently. They both seem to me to have simple and straightforward private analogues, involving the exercise of ordinary care in situations not unique to law enforcement. Police departments must exercise as much reasonable diligence when hiring, training, and supervising employees and entrusting them to drive employer-owned vehicles as does any private employer. Accordingly, sovereign immunity has been generally waived for these claims, and the next question is whether the targeted conduct involves the exercise of discretion under the "discretionary function" exception to the general waiver. I agree with my colleagues here. From what I see in the record, though, I harbor serious doubts whether Glover-Armont can ultimately prevail on the merits of these claims. For starters, the doctrine of "negligent entrustment of a motor vehicle" operates to impose liability upon one who "knowingly entrusts a vehicle to an inexperienced or incompetent person, such as a minor child unlicensed to drive a motor vehicle." *Zugel v. Miller*, 100 Nev. 525, 527, 688 P.2d 310, 312 (1984). I have trouble seeing how that could possibly apply to letting a police officer drive his assigned police cruiser on duty. But the merits of those claims are not presently before us. In the end, whether Glover-Armont can ultimately prevail on those claims or not, I agree that the State is not sovereignly immune from her efforts to try.

I diverge from my colleagues, however, with respect to the first and second claims. I would conclude that there is no private analogue for these claims, and therefore no need exists to even address whether the discretionary function exception applies. The State is simply immune whether it engaged in a discretionary function or not.

On appeal, Glover-Armont characterizes her claims as arising from a simple car crash that could have involved anyone, police or not. But her own factual allegations undermine her argument. Some car crashes involving police vehicles have straightforward private analogues: suppose a police car, not responding to an emergency, carelessly veers through a crosswalk and injures a pedestrian. In that event, the police car should be subject to the same principles of liability that apply to any private citizen because the scenario involves the kind of simple negligence that anyone can commit regardless of whether the vehicle in question was a police cruiser or a family station wagon.

But as detailed by Glover-Armont's complaint, summary judgment evidence, and briefing both below and on appeal, this case isn't so simple. The act that Glover-Armont specifically identifies as having been negligent is not simply that Sergeant Cargile drove carelessly in some way that any private actor could have. It's considerably more specific than that: it's that Cargile raced at high speed through an intersection against a red light without activating police warning sirens to clear civilians out of the way as police department policy specifically required. This is wholly unlike anything that a private citizen can do. Private actors can't legally speed on public roads (except to avoid some kind of imminent danger to them, not present here). They can't legally enter intersections against red lights (again, except to avoid some kind of imminent danger not present here).

They don't have, and can't legally ever use, police lights and sirens in any shape or form. They aren't governed by police department policies, or any civilian analogue thereto, regarding the use of police lights and sirens in traffic. They don't have to make split-second decisions on the best way to quickly get to the scene of an active shooting before the victim dies or the criminal escapes. There is no private analogue of any sort for the negligence alleged here. Consequently, I would conclude that no private analogue exists for the negligence that Glover-Armont alleges in her first and second claims for relief, and sovereign immunity has not been waived for these claims to proceed.

## VI.

Glover-Armont nonetheless argues that because a specific Nevada statute (NRS 484B.700) requires police officers to act with due care, then the Legislature must have intended to allow them to be sued when they do not, effectively creating an implied waiver to the larger rule of sovereign immunity. But that's too broad. There's no reason to read the two doctrines as necessarily being in tension with each other; indeed, when examining statutes, we're supposed to do the opposite and read them in harmony whenever possible. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 180 (2012) (Statutes should be "interpreted in a way that renders them compatible, not contradictory."). Here, the two statutes work together and complement each other quite nicely. A police officer can violate NRS 484B.700 in a way that lends itself to a private analogue under NRS 41.031(1). But a police officer can also

violate NRS 484B.700 in a way that has no private analogue under NRS 41.031(1). When the former happens, NRS 484B.700 permits a lawsuit against the government. When the latter happens, NRS 41.031(1) prohibits a lawsuit against the government. It's that simple, and there's no need to labor for anything more elaborate.

## VII.

For these reasons, I join my colleagues in remanding the third and fourth claims for relief, but would affirm the district court's grant of summary judgment with respect to Glover-Armont's first and second claims for relief.

_____, J.
Tao