THE ESTATE OF ALLEN TYRONE SMITH, JR., BY AND THROUGH ITS CO-ADMINISTRATORS ALLEN TYRONE SMITH, SR., AND SANDRA O. SMITH; ALLEN TYRONE SMITH, SR.; AND SANDRA O. SMITH, APPELLANTS, *v.* MAHONEY'S SILVER NUGGET, INC., A NEVADA CORPORATION, RESPONDENT.

No. 54752

November 23, 2011                                    265 P.3d 688

*Chesnoff & Schonfeld* and *David Z. Chesnoff* and *Richard A. Schonfeld*, Las Vegas, for Appellants.

*Christian-Kravitz, LLC*, and *Martin J. Kravitz, M. Bradley Johnson, Jennifer N. Taylor*, and *Michael B. Lee*, Las Vegas, for Respondent.

Before SAITTA, C.J., HARDESTY and PARRAGUIRRE, JJ.

## OPINION

By the Court, PARRAGUIRRE, J.:

In this opinion, we consider the apparent disconnect between NRS 651.015's limitation on innkeeper liability and our decision in *Doud v. Las Vegas Hilton Corp.*, 109 Nev. 1096, 864 P.2d 796 (1993). Having concluded that this discord arises from the multi-faceted concept of "foreseeability," we clarify that the duty element of a negligence cause of action must be determined as a matter of law by considering whether the wrongful *act* that precipitated the plaintiff's injury was foreseeable. We further conclude that NRS 651.015(3)'s definition of "foreseeable" provides the appropriate framework for conducting this inquiry in the context of innkeeper liability by codifying the common-law approach that we set forth in *Doud*. Because the district court in this case properly applied NRS 651.015(3) in determining that the act which led to the victim's death was not foreseeable, respondent Mahoney's Silver Nugget, Inc., did not owe the victim a duty as a matter of law. We therefore affirm the district court's summary judgment in favor of the Silver Nugget.

## FACTS AND PROCEDURAL HISTORY

In the early morning hours of June 25, 2006, Daniel Ott entered the Silver Nugget casino with two friends, Paris Lee and Lakiva Campbell. They proceeded into the Touchdown Lounge and joined a boisterous group of people crowded around several pool tables near the bar. This group had already caught the attention of casino security, and within five minutes of Ott's arrival, the entire group was asked to leave.

At this same time, Allen Tyrone Smith, Jr., was seated at a bar adjacent to the Touchdown Lounge. While not entirely clear, the record indicates that one of Smith's friends began arguing with Lee as Ott's group exited the Touchdown Lounge. Over a period of approximately ten seconds, Smith rose from his barstool, pushed his way through the crowd, and punched Lee in the face. In response to the perceived attack on his friend, Ott immediately revealed a concealed weapon and fatally shot Smith.

Following Smith's death, appellants—the Estate of Allen Tyrone Smith, Jr., Allen Tyrone Smith, Sr., and Sandra O. Smith (collectively, Smith's Estate)—filed suit against the Silver Nugget asserting negligence, wrongful death, and loss of consortium. The Silver Nugget filed a motion for summary judgment, which the district court granted on the ground that the Silver Nugget did not owe Smith a duty of care under NRS 651.015. This appeal followed.

## DISCUSSION

Smith's Estate argues that the district court erred in granting summary judgment in favor of the Silver Nugget because Smith's murder was foreseeable, and thus, the Silver Nugget owed Smith a duty of care under NRS 651.015.[1] This court reviews a district court's grant of summary judgment and its statutory construction determinations de novo. *See Yeager v. Harrah's Club, Inc.*, 111 Nev. 830, 833, 897 P.2d 1093, 1094 (1995); *Otak Nevada, LLC v. Dist. Ct.*, 127 Nev. 593, 597-98, 260 P.3d 408, 411 (2011). Generally, when "the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for con-

---

[1]In the alternative, Smith's Estate argues that the district court should have applied the doctrine of respondeat superior because Lakiva Campbell was an employee of the Silver Nugget. This argument is unpersuasive. Although Ott and Campbell did enter the Silver Nugget together, Campbell did not shoot Smith, and there is no evidence to support the conclusion that Campbell was involved in the murder. Moreover, Campbell was off-duty at the time of the murder, and was not subject to the Silver Nugget's control or supervision. Accordingly, we conclude that NRS 651.015 provides the proper framework for determining whether the Silver Nugget had a duty to protect Smith from the acts of a third party.

struction, and the courts are not permitted to search for its meaning beyond the statute itself." *Attorney General v. Nevada Tax Comm'n*, 124 Nev. 232, 240, 181 P.3d 675, 680 (2008) (quotations omitted). However, "[a] statute is ambiguous when it is capable of being understood in two or more senses by reasonably informed persons or it does not otherwise speak to the issue before the court." *Id.* at 240, 181 P.3d at 680-81 (quotation omitted). When interpreting an ambiguous statute, this court will review the legislative history to determine the Legislature's intent. *Id.* at 240, 181 P.3d at 681.

Before reaching the merits of this appeal, it is necessary to draw a distinction between foreseeability as it relates to duty and foreseeability as it relates to causation in assessing innkeeper liability.

### *"Foreseeability" and application of NRS 651.015*

In *Doud v. Las Vegas Hilton Corp.*, we addressed the four elements a plaintiff must establish to succeed on a negligence claim for innkeeper liability: (1) duty, (2) breach, (3) proximate causation, and (4) damages. 109 Nev. 1096, 1100, 864 P.2d 796, 798 (1993). In determining the threshold inquiry of whether an innkeeper owes a duty of care to its patron, we recognized that a duty to prevent wrongful conduct by third parties only occurs when the wrongful conduct is foreseeable. *Id.* at 1101-02, 864 P.2d at 799-800. In determining foreseeability for purposes of establishing a duty, we considered two distinct approaches: evidence of prior similar acts and a totality of the circumstances. *Id.* at 1102-03, 864 P.2d at 799-800. After concluding that the wrongful *act* was foreseeable under a totality of the circumstances, thus giving rise to a duty as a matter of law, we proceeded to discuss the remaining negligence elements. *Id.* at 1104, 864 P.2d at 800-01. Ultimately, we remanded because the issue of proximate causation—specifically whether the plaintiff's *injury* was a foreseeable consequence of the wrongful act—was a factual issue to be decided by the jury. *Id.* at 1100-06, 864 P.2d at 798-802.

The Legislature subsequently enacted NRS 651.015 to resolve a perceived defect in *Doud*[2] and to "codify what was the old law with respect" to duty. Hearing on S.B. 474 Before the Senate Judiciary Comm., 68th Leg. (Nev., May 18, 1995). In doing so, the

---

[2]To do so, the bill clarified that a judge, not a jury, is to determine the existence of a duty based on the innkeeper's notice of danger. *See* Hearing on S.B. 474 Before the Assembly Comm. on Judiciary, 68th Leg. (Nev., June 10, 1995). As mentioned, it appears that the Legislature may have misconstrued *Doud*'s holding.

Legislature set forth a general limitation precluding the imposition of civil liability on an innkeeper unless the death or injury of a patron was caused by the foreseeable wrongful act of a third party (duty), and there is a preponderance of evidence to show a failure to exercise due care (evidentiary threshold for breach). NRS 651.015(1). With this general framework in mind, the Legislature set forth the applicable standard for assessing whether an innkeeper is liable for the acts of a third party in NRS 651.015(2).

The preliminary inquiry in any case involving innkeeper liability is whether "[t]he wrongful act which caused the death or injury was foreseeable," and thus, whether a duty of care was owed to the plaintiff. NRS 651.015(2)(a). If an injury is unforeseeable, then the innkeeper owes no duty, and the district court has no occasion to consider the remaining elements of the plaintiff's cause of action, including breach, which is addressed in NRS 651.015(2)(b). The determination of foreseeability as it relates to an innkeeper's duty of care to a patron must be made by the district court as a matter of law. *See* NRS 651.015(2).

In determining whether a wrongful act is "foreseeable" and thus gives rise to a duty as a matter of law, the Legislature provided a definition in NRS 651.015(3). The subsection provides that a wrongful act is not "foreseeable" unless:

> (a) The owner or keeper *failed to exercise due care* for the safety of the patron or other person on the premises; *or*
> (b) *Prior incidents of similar wrongful acts* occurred on the premises and the owner or keeper had notice or knowledge of those incidents.

NRS 651.015(3) (emphases added).

At first blush, this definition appears counterintuitive because "due care" is a term of art generally used to describe the negligence element of *breach*—an element typically reserved for determination by the jury. *See Doud*, 109 Nev. at 1104, 864 P.2d at 801. However, as previously stated, NRS 651.015(2) expressly provides that *duty* is a question of law to be decided by a judge.[3]

---

[3]The parties suggest that NRS 651.015(3) requires the district court to decide both issues of duty and proximate cause as a matter of law. We disagree. The statute expressly states that "[t]he court shall determine as a matter of law whether the *wrongful act* was foreseeable." NRS 651.015(2) (emphasis added). By using the language "wrongful act" in NRS 651.015(3), we presume that the Legislature intended to address foreseeability within the context of duty, but not within the context of proximate causation. *See, e.g., Doud*, 109 Nev. at 1102, 1105, 864 P.2d at 799, 801 (defining "foreseeability" in relation to duty as reasonable cause to anticipate a *wrongful act*, in contrast with proximate causation, which focuses on the foreseeability of the harmful *consequence*).

Accordingly, as the statute is ambiguous, we turn to the legislative history for guidance on NRS 651.015(3)(a)'s proper interpretation.

The legislative history indicates that the "due care" language in NRS 651.015(3)(a) was intended as authority for a judge to look beyond the existence of "similar wrongful acts" under NRS 651.015(3)(b) in determining the existence of a duty, and to consider other circumstances regarding the basic minimum precautions that are reasonably expected of an innkeeper. Hearing on S.B. 474 Before the Senate Judiciary Comm., 68th Leg. (Nev., June 10, 1995). Although an innkeeper cannot guarantee the safety of guests, the Legislature recognized that certain minimum precautions are necessary and concluded that a judge should be given broad leeway in evaluating foreseeability on a case-by-case basis. *Id.* As a result, the Legislature added the phrase "the owner or keeper failed to exercise due care for the safety of the patron or other person on the premises" to the definition of "foreseeable," which ensured that a duty could be imposed "regardless of whether or not there had been prior [similar] incidents" of wrongful conduct. *Id.*

This standard is akin to Nevada's "totality of the circumstances" approach established in *Doud*, 109 Nev. at 1101-04, 864 P.2d at 799-801 (imposing a duty where there is reasonable cause to anticipate a wrongful act, regardless of past experience). Other jurisdictions have similarly articulated that "duty encompasses a responsibility to take reasonable steps to secure the premises against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures." *Lopez v. Baca*, 120 Cal. Rptr. 2d 281, 286 (Ct. App. 2002) (quotations and citations omitted). In other words: an innkeeper's outright failure to take reasonable precautions to protect its patrons would increase the likelihood of injury caused by a third party (without regard to the issues of breach or proximate causation), thus making a third party's wrongful act more "foreseeable."

After review of the legislative history, we conclude that NRS 651.015(3) allows a judge to evaluate evidence of "[p]rior incidents of similar wrongful acts" *or* any other circumstances related to the exercise of "due care" when imposing a duty under NRS 651.015(2). This aligns the statute's definition of "foreseeable" with *Doud*'s "totality of the circumstances" approach by allowing a judge to look beyond the existence of "similar wrongful acts" in determining the existence of a duty. Having thus interpreted NRS 651.015's foreseeability requirement, we must now determine whether the fatal shooting in this case was foreseeable to the Silver Nugget.

*The district court properly concluded that the Silver Nugget did not owe Smith a duty of care*

Smith's Estate argues that the shooting was foreseeable based on prior incidents of similar wrongful acts that had occurred at the Silver Nugget. We disagree.

To begin, NRS 651.015(3)(b) provides that foreseeability may be determined by an owner's knowledge of prior similar wrongful acts. However, it does not provide any guidance as to which acts should be considered "similar." Smith's Estate contends that all violent acts occurring anywhere on an innkeeper's premises— whether inside or outside the casino—should be considered similar. The Silver Nugget responds that violent acts occurring outside of the casino raise different safety concerns and are not similar to acts of violence within the casino. Moreover, the Silver Nugget contends that violent acts that do not concern firearms or other deadly weapons are dissimilar to a murder involving a firearm.

Accordingly, we return to the legislative history of NRS 651.015, in which several commentators noted that the phrase prior incidents of "similar wrongful acts" could be interpreted in different ways. *See, e.g.*, Hearing on S.B. 474 Before the Assembly Judiciary Comm., 68th Leg. (Nev., June 10, 1995). The drafters of the provision explained that such ambiguity was deliberate:

> When we crafted this language we used the term "similar" for purposes associated with its common usage. That is, letting the judge decide whether in fact the particular wrongful act was similar to another wrongful act. . . . The phrase we used was chosen very specifically to allow the judge to have some leeway to make the determination as to whether they were alike and that is the way the bill was drafted.

*Id.*

The legislative history proceeds to document several hypothetical situations that implicitly recognize the distinction between events occurring in the inner versus the outer areas of a casino, as well as the contrast in different levels of violence. *Id.* (noting the dissimilarities between an armed robbery in a casino elevator as compared to a car burglary in the parking lot). One possible explanation for these distinctions in determining the similarity of two events relates to a question of whether the events involve similar security issues. *Id.* (noting that casinos in different towns should not be considered similar because "[t]hey are not similar in the way they handle security").

In this case, Smith's Estate points to multiple criminal incidents occurring in and around the Silver Nugget, which it contends are

similar enough to Smith's murder to have provided the casino with notice that additional precautions were necessary. Most notably, Smith's Estate points to a number of fistfights and robberies that occurred inside the casino within five years prior to the murder. However, after reviewing the record, it does not appear that weapons were used in any of these incidents, and no serious injuries resulted.[4] In each incident, casino security handled the disturbances by escorting the individuals off the premises while maintaining the safety of customers inside the casino.

Smith's Estate also references several incidents that occurred in the Silver Nugget's parking lot outside of the casino. In particular, Smith's Estate notes that there was a report of shots fired in or near the parking lot approximately four years prior to Smith's murder, and that there had been two other reports of people possibly brandishing firearms in the parking lot after that time. Nobody was shot in any of these instances, nor does it appear from the record that any of the participants in these events were patrons of the Silver Nugget.

Therefore, we conclude that the district court properly determined that the fatal shooting was unforeseeable under NRS 651.015(3)(b) "because there were no prior incidents of similar wrongful acts [that] occurred on the premises."

However, as discussed in *Doud*, proof of prior incidents of similar wrongful acts are sufficient, but not always necessary, for establishing the existence of a duty. The legislative history of NRS 651.015(3)(a) likewise indicates that the circumstances surrounding the commission of a wrongful act may provide the requisite foreseeability for imposing a duty even where no prior incidents of similar wrongful conduct have occurred on the premises. Although Smith's Estate focuses solely on "prior similar acts," we note that the district court's findings support its conclusion that a duty could not have been imposed under either prong of NRS 651.015(3).

After carefully reviewing the record, it is apparent that the Silver Nugget took basic minimum precautions to ensure the safety of its patrons. There is no evidence to suggest that the Silver Nugget should have known that Ott was carrying a concealed weapon when he entered the premises. Also, the Silver Nugget promptly deployed security to request that the boisterous group leave the Touchdown Lounge. Thus, we are convinced that the circumstances leading up to Smith's murder did not provide the requisite foreseeability for imposing a duty upon the Silver Nugget under NRS 651.015(3)(a).

---

[4]In two incidents, the suspects possessed knives but did not use them. In another incident, a robbery suspect asserted that he had a gun, but never showed one.

In conclusion, the district court made detailed findings in its order granting summary judgment in favor of the Silver Nugget. The district court found that "the undisputed evidence revealed that there were no prior criminal acts that involved firearms or handguns in the premises," and that the Silver Nugget exercised the requisite precautions for the safety of its patrons by deploying security to control the group. Accordingly, the district court concluded that the fatal shooting was "unforeseeable," as defined by both prongs of NRS 651.015(3).

We agree with the district court. Because the Silver Nugget did not owe Smith a duty under NRS 651.015 as a matter of law, we conclude that the district court properly granted summary judgment in favor of the Silver Nugget. *See Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005); *Doud*, 109 Nev. at 1100, 864 P.2d at 798 ("In order to establish entitlement to judgment as a matter of law, a moving defendant must show that one of the elements of the plaintiff's prima facie case is clearly lacking as a matter of law." (quotations omitted)). Accordingly, we affirm the judgment of the district court.

SAITTA, C.J., and HARDESTY, J., concur.