By the Court, SILVER, C.J.:
In this appeal, we consider whether the discretionary-act immunity doctrine applies to an action arising from a vehicular accident involving a police officer responding to an emergency. NRS 41.032(2) provides immunity to government officials acting within their discretionary purview. However, that statute is in tension with NRS 484B.700, which allows a police officer to proceed past a red traffic signal in an emergency, but also requires that officer to utilize audio and visual or visual signals only, as required by law, and to drive with due regard for others' safety when doing so. Having considered the tension between these two statutes, we conclude that discretionary-act immunity is unavailable in the circumstance identified above because the language of NRS 484B.700(4) mandates that the police officer drive with due regard for the safety of others, and this duty is not discretionary.
While responding to an emergency call early one morning, North Las Vegas Police Department Sergeant John Cargile made a left turn against a red light, and collided with Japonica Glover-Armont's vehicle, injuring her. Glover-Armont thereafter sued Sergeant Cargile and the City of North Las Vegas, alleging various negligence claims and vicarious liability. The district court granted summary judgment in favor of Sergeant Cargile and the City of North Las Vegas, concluding the doctrine of discretionary-act immunity provided them with qualified immunity to Glover-Armont's claims.
We conclude that the district court erred by granting summary judgment based upon discretionary-act immunity as NRS 484B.700(4) does not confer discretion, and therefore, the discretionary-immunity doctrine does not apply. We further conclude that the facts regarding the incident are highly contested, and a jury, taking the facts in the light most favorable to Glover-Armont, could conclude that Sergeant Cargile breached NRS 484B.700(4) 's duty of care. Accordingly, summary judgment on Glover-Armont's negligence, negligent entrustment, and vicarious liability claims was improper.
FACTS AND PROCEDURAL HISTORY
In the early morning hours of November 5, 2012, appellant Japonica Glover-Armont drove eastbound towards an intersection displaying a green traffic signal for eastbound traffic. Simultaneously, respondent North Las Vegas Police Department Sergeant John Cargile, responding to an emergency, drove northbound toward the same intersection. A large hill located off the southwest corner of the intersection obstructed both Sergeant Cargile's view of eastbound oncoming traffic and Glover-Armont's view of northbound oncoming traffic. Sergeant Cargile, in an effort to quickly reach the emergency, attempted to make a left turn against the red traffic signal for northbound traffic, but his vehicle collided with Glover-Armont's vehicle within the intersection. Glover-Armont suffered injuries in the collision. The parties do not dispute that Sergeant Cargile activated his emergency lights, but Glover-Armont contends that Sergeant Cargile failed to use his siren.
*49 Glover-Armont sued Sergeant Cargile and respondent City of North Las Vegas for negligence, vicarious liability, and negligent entrustment, as well as negligent hiring, training, and supervision. Glover-Armont alleged that Sergeant Cargile failed to use due care and failed to engage his siren in the course of responding to an emergency. The City of North Las Vegas traffic investigator who investigated the accident reported that Glover-Armont was not speeding and that it was impossible for Sergeant Cargile to see oncoming eastbound traffic while traveling northbound until he entered the intersection.
Sergeant Cargile and the City of North Las Vegas (collectively, North Las Vegas) moved for summary judgment, arguing that discretionary-act immunity barred Glover-Armont's claims. North Las Vegas acknowledged that the hill on the corner obstructed Sergeant Cargile's visibility, making it nearly impossible for him to see eastbound oncoming traffic before entering the intersection. Nevertheless, North Las Vegas argued that Sergeant Cargile's decision to enter the intersection against a red traffic signal, even if made without due care, was a discretionary decision in furtherance of public policy because he did so in response to an emergency call, and, therefore, discretionary-act immunity barred all of Glover-Armont's claims against North Las Vegas.
Glover-Armont conceded that Sergeant Cargile's decision to proceed against a red traffic signal in an emergency was discretionary. However, she argued that his decision to do so without a siren and without due care as required by NRS 484B.700 was not discretionary. Additionally, Glover-Armont noted in her supplemental opposition to North Las Vegas' summary judgment motion that the parties still disputed whether Glover-Armont saw Sergeant Cargile's lights, whether Sergeant Cargile engaged his siren, whether Glover-Armont had her headlights on, whether Cargile proceeded through the intersection when Glover-Armont was already in the intersection, and who hit whom.
During argument on North Las Vegas' summary judgment motion, the district court noted that the parties still disputed whether Sergeant Cargile operated his siren when traveling through the red light, and that both Sergeant Cargile and Glover-Armont acknowledged during deposition testimony that each did not see the other until each entered the intersection due to the hill. The district court denied summary judgment based on this factual dispute and evidence in the record, concluding that an officer responding to an emergency still has a duty to notify the public that he is responding to an emergency, and that the fact that the hill obstructed Glover-Armont's view of northbound traffic and Sergeant Cargile's view of eastbound traffic created a genuine issue of material fact as to whether Sergeant Cargile entered the intersection in a safe manner for the public.
North Las Vegas moved for reconsideration, citing two additional cases and arguing that discretionary-act immunity applied even if Sergeant Cargile abused his discretion. Glover-Armont opposed the motion for reconsideration, arguing that North Las Vegas' motion was flawed because it incorrectly relied on an exception to the discretionary-act immunity doctrine for intentional torts. After a hearing, the district court granted North Las Vegas' motion for reconsideration.
The district court thereafter granted summary judgment as to Glover-Armont's negligence claim against North Las Vegas, finding, without addressing NRS 484B.700, that Sergeant Cargile used his individual judgment in deciding whether and how to proceed against the red traffic signal and that his decisions were discretionary, such that North Las Vegas was entitled to discretionary-act immunity. And given that finding, the district court also concluded that summary judgment was warranted as to Glover-Armont's remaining claims against North Las Vegas for negligent entrustment, vicarious liability, and negligent hiring, training, and supervision. To support its overall decision, the district court cited public policy concerns, noting that Sergeant Cargile acted to protect the public, enforce the law, and apprehend criminals.
ANALYSIS
The primary issue raised in this appeal is whether discretionary-act immunity, a *50 qualified immunity, provided North Las Vegas with an affirmative defense to Glover-Armont's claims.[1]
We review a district court's order granting summary judgment de novo and will uphold summary judgment only where "the pleadings and other evidence on file demonstrate that no genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law." Wood v. Safeway, Inc., 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (alteration in original) (internal quotation marks omitted). We review the pleadings and other proof in a light most favorable to the nonmoving party. Id. at 732, 121 P.3d at 1031. Genuine issues of material fact remain if a reasonable jury could return a verdict in favor of the nonmoving party based on the evidence presented. Butler v. Bayer, 123 Nev. 450, 457-58, 168 P.3d 1055, 1061 (2007). However, Nevada's appellate courts are reluctant to affirm summary judgment on negligence claims because the question of whether a defendant exercised reasonable care is nearly always a question of fact for the jury. Id. at 461, 168 P.3d at 1063.
On appeal, Glover-Armont argues that the district court erred by granting summary judgment, asserting questions of fact remain as to whether Sergeant Cargile used due care, pursuant to NRS 484B.700, in proceeding through the intersection against a red traffic signal. North Las Vegas counters that the district court correctly granted summary judgment because, under NRS 41.032(2), discretionary-act immunity bars Glover-Armont's claims.[2]
In addressing these arguments, we first consider the applicability of Nevada's *51 discretionary-act immunity doctrine to a police officer acting pursuant to NRS 484B.700 's exemptions, and thereafter determine the scope of NRS 484B.700(4) 's duty of care and whether summary judgment was appropriate under these facts.[3]
Discretionary-act immunity
Nevada generally waives sovereign immunity. NRS 41.031. However, a doctrine known as discretionary-act immunity, codified as NRS 41.032(2), provides an exception to this general waiver through a qualified immunity for state agencies and their employees who perform discretionary acts. City of Boulder City v. Boulder Excavating, Inc., 124 Nev. 749, 754, 756, 191 P.3d 1175, 1178, 1179-80 (2008). In Martinez v. Maruszczak, Nevada adopted the federal two-part Berkovitz - Gaubert[4] test for determining whether a state actor is protected by discretionary-act immunity. 123 Nev. 433, 445-47, 168 P.3d 720, 728-29 (2007). Under the Berkovitz - Gaubert test, the discretionary-act immunity doctrine applies if the decision "(1) involve[s] an element of individual judgment or choice and (2) [is] based on considerations of social, economic, or political policy." Id. at 446-47, 168 P.3d at 729. Since adopting the federal Berkovitz - Gaubert test, Nevada's appellate courts have yet to apply this test to actions permitted by NRS 484B.700.
A critical preliminary step in the discretionary-act immunity analysis is identifying the specific government action challenged before turning to the Berkovitz - Gaubert test. See Young v. United States , 769 F.3d 1047, 1053-54 (9th Cir. 2014) (providing that a district court must first identify the specific agency action challenged before turning to the Berkovitz - Gaubert test); cf. N. Nev. Ass'n of Injured Workers v. Nev. State Indus. Ins. Sys., 107 Nev. 108, 113, 807 P.2d 728, 731 (1991).
As a threshold matter, we conclude that the district court incorrectly applied the Berkovitz - Gaubert test because it failed to pinpoint Glover-Armont's specific allegations within her complaint. See Young, 769 F.3d at 1053 ("To identify the particular agency conduct with which [p]laintiffs take issue, we look to the allegations of [p]laintiffs' complaint."); see also N. Nev. Ass'n of Injured Workers, 107 Nev. at 113, 807 P.2d at 731 ("In analyzing respondents' entitlement to immunity under [ NRS 41.032 ], it is necessary to determine whether the acts alleged in appellants' amended complaint are properly categorized as discretionary."). Below, North Las Vegas framed Glover-Armont's allegation as a blanket challenge to Sergeant Cargile's decision to enter the intersection against a red traffic signal in an emergency, when in fact Glover-Armont alleged that the conditions and manner in which Sergeant Cargile proceeded through the red traffic signal did not adhere to NRS 484B.700 's standard of care. The district court did not address NRS 484B.700 and did not determine whether the statute requires police officers to use their own judgment when acting under the statute's exemptions. Accordingly, we turn to the first prong of the Berkovitz - Gaubert test with Glover-Armont's precise allegations in mind and determine whether NRS 484B.700 confers discretion.
NRS 484B. 700 does not confer discretion
Glover-Armont contends that the duty to comply with NRS 484B.700 's requirements is not discretionary. We agree.
*52 We review questions of law de novo. Clark Cty . Sch . Dist. v. Payo, 133 Nev. ----, ----, 403 P.3d 1270, 1275 (2017). In Nevada, an act is discretionary if law or policy allows the public official to use his or her own judgment and deliberation in acting. Ransdell v. Clark Cty., 124 Nev. 847, 856-57, 858, 192 P.3d 756, 763, 764 (2008) (holding that Clark County's actions were discretionary under the Berkovitz - Gaubert test because the Clark County Code provided its officials with the discretion to take action). NRS 484B.700 allows an officer to proceed through a red traffic signal when responding to an emergency, but requires the officer to "slow[ ] down as may be necessary for safe operation" and to use either "(a) [a]udible and visual signals; or (b) [v]isual signals only, as required by law." Moreover, NRS 484B.700(4) expressly provides that it does not relieve the officer from "the duty to drive with due regard for the safety of all persons" or "protect the [officer] from the consequences of [the officer's] reckless disregard for the safety of others."
Nevada's appellate courts have not addressed whether this statute confers discretion or requires the state actor to abide by a nondiscretionary standard of care. Other jurisdictions have addressed similar issues with mixed outcomes. For example, North Las Vegas asserts that this court should follow the Minnesota Supreme Court's reasoning in Vassallo v. Majeski, 842 N.W.2d 456 (Minn. 2014).
In Vassallo, the Minnesota Supreme Court determined that, as relevant here, Minnesota's emergency vehicle statute conferred discretion, and thus, discretionary-act immunity barred the plaintiff's claims. Id. at 463-66. The plaintiff sued for injuries sustained after a police officer responding to an emergency sped through an intersection against a red traffic signal and collided with the plaintiff's vehicle. Id. at 460. Minnesota's emergency vehicle statute provided that when an emergency vehicle approaches a red traffic signal it must "slow down as necessary for safety, but may proceed cautiously past such red or stop sign or signal after sounding siren and displaying red lights." Id. at 461 n.2. The Vassallo court concluded that the requirement to "slow down as necessary for safety" was conditioned upon the driver's determination of a safe speed. Id. at 463. In addition, the court likened the term "proceed cautiously" to a duty to use due care to avoid a collision and concluded that a due care requirement calls for the use of independent judgment. Id. Thus, the court concluded that these requirements conferred a discretionary duty to which immunity applied.[5] Id. at 463-64.
However, other courts addressing similar situations have determined that an emergency vehicle statute does not confer discretion in circumstances similar to the case at hand. See Legue v. City of Racine, 357 Wis.2d 250, 849 N.W.2d 837, 859 (2014). For example, in Legue, the plaintiff sued a police officer and the City of Racine for injuries sustained in an accident where the police officer entered an intersection with a red traffic signal en route to an emergency call. Id. at 842-43. The police officer had lights and sirens engaged, but a building blocked her view of oncoming traffic. Id. After the jury returned a verdict in favor of the plaintiff, the lower court granted defendant's motion for judgment notwithstanding the verdict based upon discretionary-act immunity. Id. at 844.
On appeal, the Wisconsin Supreme Court considered whether the police officer was entitled to immunity based upon subsection 5 of Wisconsin's emergency vehicle statute, Wis. Stat. Ann. § 346.03 (West 2015),[6] and a city policy, which both required emergency responders to drive with "due regard under the circumstances" for the public's safety. Id. at 858. The court concluded that Wis. Stat. Ann. § 346.03(5) (West 2015) and the city policy imposed a nondiscretionary duty to drive with "due regard under the circumstances"
*53 when responding to an emergency. Id. at 859-60, 862. In reaching this conclusion, the court reasoned that § 346.03(5) 's language qualified the privileges contained in the earlier part of the statute allowing the emergency responder to disregard speed limits and proceed through red traffic signals, and that the only reasonable interpretation of § 346.03(5) 's conditions was to impose liability on the governmental actor. Id. at 851 (discussing § 346.03(5) 's declaration that "the exemptions granted the operator of an authorized emergency vehicle by this section do not relieve such operator from the duty to drive or ride with due regard under the circumstances for the safety of all persons" and explaining that "[t]his language leads us to conclude that an exemption or privilege begets immunity and a duty begets liability"); see Wis. Stat. Ann. § 346.03(1) - (2) (West 2015). Further, the court reasoned that " § 346.03(5) ['s] declar[ation] that the exemptions or privileges 'do not relieve such operator from the duty to drive with due regard' " was mandatory language. Legue, 849 N.W.2d at 858. The court ultimately concluded that the duty to maintain a particular standard of care is not discretionary, and reinstated the jury verdict. Id. at 858-59, 862.
Wisconsin's statute, like Nevada's statute, states that "[t]he exemptions granted the operator of an authorized emergency vehicle by this section do not relieve such operator from the duty to drive or ride with due regard under the circumstances for the safety of all persons, nor do they protect such operator from the consequences of his or her reckless disregard for the safety of others." Wis. Stat. Ann. § 346.03(5) (West 2015) (emphasis added); see also NRS 484B.700(4) ("The provisions of this section do not relieve the driver from the duty to drive with due regard for the safety of all persons and do not protect the driver from the consequences of the driver's reckless disregard for the safety of others."). And while Minnesota's statute shares some similarities with both Nevada's and Wisconsin's statutes, it is distinctly distinguishable insofar as it does not require an emergency vehicle operator to drive with due regard for the public's safety, but rather states the emergency vehicle operator "may proceed cautiously." Minn. Stat. Ann. § 169.03(2) (West 2016); NRS 484B.700(4) ; Wis. Stat. Ann. § 346.03(5) (West 2015), Of course, in Vassallo, the court likened the term "proceed cautiously" to a duty to use due care, 842 N.W.2d at 463, and arguably, a duty to use due care is similar to Nevada's duty to drive with due regard.
But critically, Minnesota's statute uses the phrase "proceed cautiously" in an open-ended manner, which, as the Minnesota Supreme Court noted, indicates that officers are allowed to use their personal judgment in order to determine what constitutes caution under the circumstances. Vassallo, 842 N.W.2d at 463. Conversely, Nevada's statute, like Wisconsin's statute, uses mandatory language in providing that the privileges set forth therein "do not relieve" the driver from the "duty to drive with due regard," NRS 484B.700(4) ; see Wis. Stat. Ann. § 346.03(5), which is indicative of a nondiscretionary duty to act in a certain manner and liability for failing to do so. Indeed, as the Wisconsin Supreme Court reasoned in Legue, where there is a duty, there is also liability. See 849 N.W.2d at 851 (asking rhetorically, "[w]hy would the legislature exempt an operator of an authorized emergency vehicle from complying with certain rules of the road and impose a duty of due regard unless a violation of the duty can result in liability?").
The reasoning in Legue and the similarity between Nevada's and Wisconsin's emergency vehicle statutes are persuasive here, and we therefore conclude that NRS 484B.700(4) imposes a mandatory duty, which gives rise to liability if breached.[7] See id. Accordingly, we hold that a police officer's duty to drive with due care when responding to an emergency is mandatory, not discretionary, under the first prong of the Berkovitz - Gaubert test.[8] Cf.
*54 N. Nev. Ass'n of Injured Workers v. Nev. State Indus. Ins. Sys ., 107 Nev. 108, 114, 807 P.2d 728, 731 (1991) (explaining that mandatory duties entail little or no discretion, and that the discretionary-act immunity doctrine does not apply to such obligatory acts). This conclusion is consistent with the approach taken by several other jurisdictions.[9] See Biscoe v. Arlington Cty., 738 F.2d 1352, 1363 (D.C. Cir. 1984) ; Legue, 849 N.W.2d at 859 ; Mason v. Bitton, 85 Wash.2d 321, 534 P.2d 1360, 1365 (1975) (en banc).[10]
In reaching this conclusion, we reject a broad-based view of discretionary-act immunity that would render any accident involving a public vehicle responding to an emergency nonactionable. We are mindful that the Legislature intended to give emergency vehicles privileges to allow swift response to those in need; however, the Legislature and our courts have long held that such privileges are to be exercised while keeping the safety of all members of the public in mind. See NRS 484B.700(4) ; Johnson v. Brown, 75 Nev. 437, 445, 345 P.2d 754, 758 (1959). Moreover, this holding is in line with the purpose behind Nevada's waiver of sovereign immunity, which is to equally compensate victims of negligence regardless of whether the negligent actor is a state official or private citizen. See Martinez , 123 Nev. at 444, 168 P.3d at 727 (discussing the purpose of Nevada's waiver of sovereign immunity).
Given the foregoing, because we hold that NRS 484B.700 does not afford discretion, North Las Vegas was not entitled to discretionary-act immunity as to Glover-Armont's negligence, negligent entrustment, and vicarious liability claims, and we need not reach the second prong of the Berkovitz - Gaubert test.[11] Accordingly, we conclude that the district court erred by granting North Las Vegas summary judgment as to Glover-Armont's negligence, negligent entrustment, and vicarious liability claims based on that conclusion.[12]
*55 With this in mind, we now turn to the parties' arguments regarding whether genuine issues of fact remain to preclude summary judgment.
Summary judgment was improper
Glover-Armont asserts that there are several issues of material fact that preclude summary judgment because the facts, when viewed in a light most favorable to Glover-Armont, demonstrate that Sergeant Cargile failed to proceed with due care as required by NRS 484B.700(4).
NRS 484B.700(4) states that a police officer traveling through a red traffic signal in an emergency is not relieved "from the duty to drive with due regard" for the public's safety nor protected from the consequences of the officer's reckless disregard for the public's safety. The Nevada Supreme Court has previously interpreted similar language within a Reno Municipal Ordinance[13] to impose an ordinary negligence standard of liability, holding that an emergency responder has a "duty to be on the lookout at all times for the safety of the public whose peril is increased by their exemptions from the rules of the road." Johnson , 75 Nev. at 445, 345 P.2d at 758.
In Johnson, a firefighter responding to an emergency sped through an intersection with obstructed visibility without stopping at a stop sign and collided with another driver whose passenger then brought suit. Id. at 439, 345 P.2d at 755. The jury found in favor of the plaintiff, and the firefighter appealed arguing that the Reno Municipal Ordinance requiring him to "drive with due regard for the safety of others" was met because he was utilizing lights and sirens. Id. at 439-40, 345 P.2d at 755 (internal quotation marks omitted). The supreme court disagreed concluding that the Reno Municipal Ordinance imposed an ordinary negligence standard of liability and opining that the government is better able to bear the burden of tort liability than an individual to bear loss from an accident. Id. at 442-45, 345 P.2d at 756-58.
While Johnson was decided before NRS 41.032, the discretionary-act immunity statute, was enacted, 75 Nev. at 437, 345 P.2d at 754 ; 1965 Nev. Stat., ch. 505, § 1-7, at 1413-15, we look to Johnson to determine the standard for liability applicable here given our conclusion that immunity does not apply. Because the language of the Reno ordinance is nearly identical to NRS 484B.700(4), we conclude that NRS 484B.700(4) imposes an ordinary negligence standard of liability. This conclusion is consistent with other jurisdictions that have interpreted similar language to impose an ordinary negligence standard of liability. See Rutherford v. State, 605 P.2d 16, 18-19, 18 n.5 (Alaska 1979) ; City of Little Rock v. Weber, 298 Ark. 382, 767 S.W.2d 529, 533 (1989) ; Barnes v. Toppin, 482 A.2d 749, 755 (Del. 1984) ; City of Baltimore v. Fire Ins. Salvage Corps, 219 Md. 75, 148 A.2d 444, 447 (1959) ; City of Kalamazoo v. Priest, 331 Mich. 43, 49 N.W.2d 52, 54 (1951) ; Cairl v . City of St. Paul, 268 N.W.2d 908, 912-13 (Minn. 1978) ; Wright v . City of Knoxville, 898 S.W.2d 177, 179-80 (Tenn. 1995) ; Estate of Cavanaugh v. Andrade, 202 Wis.2d 290, 550 N.W.2d 103, 114-15 (1996).
Below, the parties conceded that a hill blocked their respective views, but they disputed everything else about the cause and circumstances of the accident in light of their *56 obstructed views, including whether Glover-Armont saw Sergeant Cargile's lights, whether Sergeant Cargile engaged his siren, whether Glover-Armont had her headlights on, whether Cargile proceeded through the intersection when Glover-Armont was already in the intersection, and who hit whom. And conflicting evidence supported the parties' respective positions with regard to whether Sergeant Cargile gave adequate warning of his approach and what precautions he took before entering the intersection. Given this conflicting evidence, as the district court originally found, genuine issues of fact remain as to whether Sergeant Cargile violated his duty to drive with due regard, such that summary judgment was unwarranted. See Butler v. Bayer, 123 Nev. 450, 461, 168 P.3d 1055, 1063 (2007) (noting Nevada's appellate courts are reluctant to affirm summary judgment on negligence claims because the question of whether a defendant exercised reasonable care is nearly always a question of fact for the jury); Cf. Legue , 849 N.W.2d at 842-43, 862 (reinstating a jury verdict that found a police officer negligent where she, utilizing lights and sirens, entered an intersection against a red traffic signal en route to an emergency call when a building obstructed her view of oncoming traffic).
CONCLUSION
We conclude that the district court erred by granting summary judgment based upon discretionary-act immunity. NRS 484B.700 allows an officer to proceed through a red traffic signal in an emergency but imposes mandatory conditions on that privilege, including the duty to drive with due regard of the public's safety. Here, the parties contest whether Sergeant Cargile drove with due regard for the public's safety. Because a jury could conclude Sergeant Cargile did not proceed with due regard, summary judgment was improper. Accordingly, we reverse summary judgment and remand this matter to the district court for further proceedings on Glover-Armont's negligence, negligent entrustment, and vicarious liability claims.[14]
I concur:
Gibbons, J.

Our dissenting colleague suggests that, before addressing discretionary-act immunity, we must decide whether a private analogue to the conduct at issue here exists, such that Nevada can be said to have waived its sovereign immunity under NRS 41.031. But the private-analogue doctrine is a creature of statutory interpretation, see Feres v. United States, 340 U.S. 135, 141-42, 71 S.Ct. 153, 95 L.Ed. 152 (1950) (construing the Federal Tort Claims Act to require a private analogue), and Nevada's appellate courts have not imposed a private-analogue requirement on NRS 41.031. Instead, Nevada's jurisprudence in this area proceeds from the principle that the State has waived sovereign immunity and looks directly to whether discretionary-act immunity applies. See, e.g., Ortega v. Reyna, 114 Nev. 55, 62, 953 P.2d 18, 23 (1998), abrogated in part on other grounds by Martinez v. Maruszczak, 123 Nev. 433, 168 P.3d 720 (2007). And our supreme court has ruled against the State as to liability without addressing the private-analogue doctrine even where a private analogue may arguably not exist. See , e.g., Butler v. Bayer, 123 Nev. 450, 464-66, 168 P.3d 1055, 1065-67 (2007) (concluding that genuine issues of material fact remain with regard to whether the state negligently released an inmate); Golconda Fire Prot. Dist. v. Cty . of Humboldt, 112 Nev. 770, 774-75, 918 P.2d 710, 712-13 (1996) (remanding for an accounting to determine whether a county wrongfully retained interest on taxes that it collected); cf. Tobin v. Fish, 161 Wash. App. 1019, 2011 WL 1549772 (Ct. App. 2011) (unpublished) (concluding that Washington did not require a private analogue because its supreme court had ruled against the government as to liability for conduct having no private analogue).
Moreover, even if we were to adopt a private-analogue requirement for NRS 41.031, despite the dissent's suggestion to the contrary, recent federal jurisprudence on this topic would support a determination that there is a private analogue to the conduct at issue in this case. Indeed, the United States Supreme Court has explained that courts should construe the conduct and claims at issue in a case broadly in searching for a private analogue. See United States v. Olson, 546 U.S. 43, 46-47, 126 S.Ct. 510, 163 L.Ed.2d 306 (2005) (holding that the private-analogue inquiry is not restricted to "the same circumstances ," but extends "further afield" and providing, as an example, that a negligence claim against a private person who undertakes a duty to warn is a private analogue for the government's failure to maintain a lighthouse). And in that vein, federal courts have found private analogues in situations nearly identical to the present case. See, e.g., Lee v. United States, 570 F.Supp.2d 142, 150-52 (D.D.C. 2008) (determining that a private analogue existed for negligent police chases based on general traffic regulations).
Finally, we note that neither the parties nor the amicus curiae address the private-analogue doctrine, nor did the district court. While this is unsurprising given that, as detailed above, this doctrine does not impact our consideration of the discretionary-act immunity issue presented here, because the dissent's sua sponte discussion of the doctrine raises jurisdictional questions, we have briefly addressed this matter here.

The International Municipal Lawyers Association filed an amicus brief, but we do not specifically address the arguments presented therein, as they are substantially similar to those raised in North Las Vegas' answering brief.

We have also reviewed Glover-Armont's argument that the district court improperly considered her traffic citation as evidence when granting summary judgment. The record shows the district court did not consider her traffic citation, but instead considered her nolo contendere plea. We conclude that the district court improperly considered Glover-Armont's nolo contendere plea to her traffic citation. See NRS 48.125(2) ("Evidence of a plea of nolo contendere or of an offer to plead nolo contendere to the crime charged or any other crime is not admissible in a civil or criminal proceeding involving the person who made the plea or offer."). We caution the district court against considering inadmissible evidence when deciding summary judgment motions. See Henry Prods. Inc. v. Tarmu , 114 Nev. 1017, 1019, 967 P.2d 444, 445 (1998) ("Evidence introduced in support of or opposition to a motion for summary judgment must be admissible evidence.").

United States v. Gaubert, 499 U.S. 315, 322-25, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) ; Berkovitz v. United States, 486 U.S. 531, 536-39, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988).

The Vassallo court also examined a Minnesota county sheriff's office policy that required officers to drive with due regard and summarily concluded that the term "due regard" invited independent judgment, like the term "due care." 842 N.W.2d at 461 n.3, 464.

The Wisconsin statute has been amended since the Wisconsin Supreme Court entered Legue, see 2015 Wis. Laws, Act 102, at 807-08, but the amendments were to other portions of the statute.

For the same reason, this court is unpersuaded by the Minnesota court's conclusion that officers were afforded discretion under the department policy discussed above.

To the extent that Glover-Armont asserts that North Las Vegas policy also imposes a nondiscretionary duty upon a police officer to utilize both lights and sirens when responding to an emergency, we conclude that Glover-Armont fails to support this argument. In particular, while testimony in the record supports Glover-Armont's assertion, it is impossible for this court to fully review this matter, as she failed to include North Las Vegas' policy in the record. Cuzze v. Univ. & Cmty. Coll. Sys. of Nev., 123 Nev. 598, 603, 172 P.3d 131, 135 (2007) (noting appellant has the burden of providing this court with an adequate appellate record, and when the appellant "fails to include necessary documentation in the record, [this court] necessarily presume[s] that the missing portion supports the district court's decision''). Moreover, an officer does not breach the duty to drive with due regard for the safety of all persons merely by failing to operate his siren. See NRS 484D.400(5)-(6) (providing, among other things, that when an officer uses warning lamps without sounding the siren, the officer "shall be deemed to have adequately warned pedestrians and other drivers of [the officer's] approach for purposes of determining whether the [officer] met the duty to drive with due regard for the safety of all persons pursuant to NRS 484B.700").

Importantly, cases in other jurisdictions which conclude that immunity applies to protect police officers from claims arising from a traffic accident involving an emergency responder are distinguishable. For example, while discretionary-act immunity is available to first responders in Virginia, it does not immunize them from suit, but instead, elevates the standard for liability from negligence to gross negligence. Colby v. Boyden, 241 Va. 125, 400 S.E.2d 184, 186-87 (1991). And Texas' immunity doctrine likewise imposes liability for reckless conduct, but does so based on its express exclusion of emergency vehicle operators from the waiver of immunity for negligence. City of Amarillo v. Martin , 971 S.W.2d 426, 430 (Tex. 1998).

Likewise, other jurisdictions also hold immunity does not apply to bar a cause of action when a police officer's negligence causes harm to an innocent member of the public, albeit on slightly different grounds. Patrick v. Miresso, 848 N.E.2d 1083, 1086-87 (Ind. 2006) ; Horta v. Sullivan, 418 Mass. 615, 638 N.E.2d 33, 36-37 (1994) ; Jones v . Chieffo , 549 Pa. 46, 700 A.2d 417, 420 (1997) ; Haynes v. Hamilton Cty., 883 S.W.2d 606, 611 (Tenn. 1994) ; Willden v. Duchesne Cty., 217 P.3d 1143, 1145-46 (Utah Ct. App. 2009).

In light of our conclusion that North Las Vegas is not entitled to discretionary-act immunity, we need not address North Las Vegas' arguments that discretionary-act immunity applies even when a public official abuses his or her discretion, and that the bad-faith and intentional-torts exceptions do not bar immunity in this case. Franchise Tax Bd. of State of Cal. v. Hyatt , 133 Nev. ----, ----, 407 P.3d 717, 733 (2017) (holding that NRS 41.032 does not protect against intentional torts or bad-faith misconduct), petition for cert. filed, ----, U.S.L.W. ---- (U.S. Mar. 12, 2018) (No. 17-1299).

With regard to Glover-Armont's negligent hiring, training, and supervision claim, respondents cite Bryan v. Las Vegas Metro. Police Dep't, 349 F. App'x 132, 134 (9th Cir. 2009), for the argument that North Las Vegas' training decisions involve policy judgments of the type the discretionary-function exception is designed to shield, and Glover-Armont failed to address that case in her reply brief or otherwise offer specific argument as to why North Las Vegas' failure to adequately train Sergeant Cargile did not involve a shielded policy judgment. Thus, Glover-Armont waived any argument that North Las Vegas was not immune from Glover-Armont's negligent hiring training and supervision claims. See State ex rel. State Bd. of Equalization v. Bakst, 122 Nev. 1403, 1417 n.41, 148 P.3d 717, 726 n.41 (2006) (concluding appellant waived its argument when it did not refute respondent's argument in its reply brief). Therefore, we affirm summary judgment as to Glover-Armont's negligent hiring, training, and supervision claim.

Reno Municipal Code (RMC) § 10-60 (1954) (allowing emergency responders certain exemptions from the rules of the road and providing that the ordinance's exemptions "shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the street, nor shall it protect the driver of any such vehicle from the consequence of a reckless disregard for the safety of others").

In light of our disposition of this appeal, we do not reach Glover-Armont's argument that the district court improperly granted reconsideration of its original oral denial of North Las Vegas' motion for summary judgment. But we vacate the district court's order awarding costs to North Las Vegas as the prevailing party. Doud v. Las Vegas Hilton Corp ., 109 Nev. 1096, 1106, 864 P.2d 796, 802 (1993) (vacating the district court's costs award made to the prevailing party in light of reversal), superseded by statute on other grounds, NRS 651.015, as recognized in Estate of Smith v. Mahoney's Silver Nugget, Inc., 127 Nev. 855, 858-59, 265 P.3d 688, 691 (2011).